UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

JET STAR ENTERPRISES, LTD.,

              Plaintiff,

      - against -

GEORGE SOROS, PURNENDU CHATTERJEE,
DEUTSCHE BANK TRUST COMPANY
AMERICAS, MORGAN STANLEY CS AVIATION
HOLDINGS LLC, WELLS FARGO BANK
NORTHWEST, N.A., AKIN GUMP STRAUSS
HAUER & FELD LLP, BINGHAM McCUTCHEN
LLP, SIDLEY AUSTIN BROWN & WOOD LLP, and
MB STATUTORY TRUST,

              Defendants.

------------------------------------------------------------------ x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

05-CV-6585 (HB)

**Filed Electronically**

# DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION AND IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### Submitted By:

BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York 10022
(212) 705-7000
*Attorneys for Defendants Deutsche Bank, Trust
Americas, Morgan Stanley CS Aviation Holdings
LLC, MB Statutory Trust, and Bingham McCutchen
LLP*

PATTERSON BELKNAP WEBB & TYLER,
LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2555
*Attorneys for Akin Gump Strauss Hauer & Feld
LLP*

BUTLER, FITZGERALD, FIVESON &
McCARTHY, P.C.
350 Fifth Avenue
Suite 6215
New York, New York 10118
(212) 615-2200
*Attorneys for George Soros*

VEDDER, PRICE, KAUFMAN &
KAMMHOLZ, P.C.
805 Third Avenue
New York, New York 10022
(212) 407-6990
*Attorneys for Wells Fargo Bank Northwest, N.A.*

FRIEDMAN KAPLAN SEILER & ADELMAN
LLP
1633 Broadway
New York, New York 10019
(212) 883-1115
*Attorneys for Sidley Austin Brown & Wood LLP*

MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Of Counsel*

POSTERNAK BLANKSTEIN & LUND LLP
The Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 973-6131
*Attorneys for Purnendu Chatterjee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .............................................................................................................. 3

I.     THE COMPLAINT IS DEFICIENT ON ITS FACE AND SHOULD BE
DISMISSED PURSUANT TO RULES 9(B) AND 12(B)(6) WITHOUT
REFERENCE TO ANY OF THE DOCUMENTS PLAINTIFF ASSERTS ARE
OUTSIDE THE SCOPE OF THE COMPLAINT ............................................... 3

II.    THE COURT MAY CONSIDER THE DOCUMENTS ATTACHED TO
DEFENDANTS' MOTION BECAUSE THEY ARE INTEGRAL TO THE
COMPLAINT AND/OR ARE INCORPORATED BY REFERENCE ........................... 4

       A.     The Acceptance Agreement Is Central To The Allegations In Plaintiff's
Complaint ........................................................................................................ 5

       B.     The Credit Agreement and Pledge Agreement May Also Be Considered
By This Court on Defendants' Motion to Dismiss ......................................... 7

       C.     The Trust Agreements Attached To The Grosz Declaration Are Integral
To Plaintiff's Complaint Against Wells Fargo .............................................. 8

III.   THE COURT CAN DECIDE DEFENDANTS' MOTION WITHOUT
DISCOVERY BASED ON THE DOCUMENTS ATTACHED TO THE
DECLARATIONS ................................................................................................. 9

CONCLUSION ......................................................................................................... 10

APPENDIX

Page

*Belin v. Weissler*,
No. 97 Civ. 8787 (RWS), 1998 WL 391114 (S.D.N.Y. July 14, 1998) ..................................... 6

*Bowens v. Aftermath Entertainment*,
254 F. Supp. 2d 629 (E.D. Mich. 2003) ................................................................................... 6

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ..................................................................................................... 4

*In Re Merrill Lynch Ltd. Partnerships Litig.*,
154 F.3d 56 (2d Cir. 1998) .................................................................................................... 8, 9

*New Moon Shipping Co., Ltd. v. MAN B & W. Diesel AG*,
121 F.3d 24 (2d Cir 1997) ........................................................................................................ 7

*Paddington Partners v. Bouchard*,
34 F.3d 1132 (2d. Cir. 1994) .................................................................................................... 9

*Williams v. Deutsche Bank Sec. Inc.*,
No. 04 Civ. 7588 (GEL), 2005 WL 1414435 (S.D.N.Y. June 13, 2005) ............................. 4, 7

Defendants respectfully submit this consolidated memorandum of law in Opposition to plaintiff's Cross-Motion to Convert Defendants' Rule 12(b)(6) Motion to a Motion for Summary Judgment or Strike Matters Outside the Pleading ("Cross-Motion") and in further support of their Motion to Dismiss the Complaint filed by plaintiff.

## PRELIMINARY STATEMENT

Plaintiff's response to Defendants' Consolidated Motion to Dismiss[1] ignores the main issues raised therein -- that the Complaint is completely devoid of any particularity, does not state claims upon which relief can be granted against any of the Defendants, and *on its face* cannot withstand a motion to dismiss. Rather than address the merits of its pleading, plaintiff moves to convert the Motion to Dismiss into a motion for summary judgment, or, in the alternative, to "strike matters outside the pleading," on the ground that certain documents attached to the Motion purportedly are not integral to, or relied upon in, the Complaint.

The Court need not address plaintiff's arguments about the documents attached to Defendants' Motion because many of Defendants' arguments in their Motion to Dismiss, such as plaintiff's failure to plead fraud with particularity or otherwise plead essential elements of the claims in the Complaint, are not dependent upon any of those documents. Defendants clearly stated in their Opening Brief: "[e]ven if the Court were inclined *not* to consider the documents referred to and relied on by plaintiff ... *dismissal of this action is fully justified due to the bald and insufficient allegations contained within the four corners of the complaint*." Opening Br., p. 10, n. 11 (emphasis added). By filing its Cross-Motion and ignoring the Court's August 25, 2005 Order (the "Order") directing it to file an Opposition to Defendants' Motion to Dismiss no later than October 12, 2005, plaintiff unilaterally seeks to adjourn the Court's briefing schedule

---

[1] All capitalized terms in this Reply Memorandum of Law have the definitions ascribed to them in the Opening Memorandum of Law submitted by Defendants ("Opening Brief").

and asks the Court to decide its Cross-Motion before plaintiff "officially" responds to the Motion to Dismiss. Plaintiff does not need adjudication of its Cross-Motion in order to respond to Defendants' Motion seeking to dismiss the Complaint based on fundamental pleading deficiencies. Given the requirements of Rule 11, plaintiff should be prepared to defend the sufficiency of its own pleading right now. [2]

Moreover, as demonstrated in Point I of Defendants' Opening Brief, and further herein, the documents attached to both the Gould and Grosz Declarations are integral to the Complaint, and/or are incorporated by reference. In particular, the Acceptance Agreement is *central* to the allegations of the Complaint because it is the transaction that is referred to in the Complaint, and plaintiff undeniably had the agreement in its possession when the Complaint was drafted. Yet, plaintiff evasively asserts that while the Complaint "refers to 'an agreement' entered on July 25, 2003," it is not necessarily referring to the July 25, 2003 Acceptance Agreement. Plaintiff refuses to say one way or the other but it is obvious the agreements are one and the same.

Lastly, plaintiff asks that if the Court were to convert Defendants' Motion into one for summary judgment, that the Court also defer disposition of that Motion in order to allow plaintiff to take discovery. As demonstrated herein, even if the Motion is converted to a summary judgment motion there is no need to defer disposition of the Motion because there are no genuine issues of material fact that warrant discovery.

For all of the foregoing reasons, and as more fully demonstrated herein, plaintiff's Cross-Motion should be denied and Defendants' Motion should be granted. If the Court grants

---

[2] Plaintiff argues that the Court should vacate the briefing schedule set forth in the Order because "it [would] be impossible for plaintiff's counsel to prepare a meaningful and appropriate opposition to Defendants' Consolidated Motion to Dismiss, until this Court rules on the instant plaintiff's motion." Cross-Motion, p. 18. There is absolutely no reason why plaintiff could not have responded to a 12(b)(6) Motion concerning the sufficiency of its Complaint by the deadline set in the Order. The Court should deny plaintiff's request and adhere to the briefing schedule set almost two months ago.

plaintiff's Cross-Motion and strikes matters deemed "outside the pleading," the Complaint still fails on its face, and should be dismissed in its entirety. Even if the Court converts Defendants' Motion into one for summary judgment, it still should grant Defendants' Motion and dismiss the Complaint as the documents indisputably show that plaintiff has no claim against Defendants.

## ARGUMENT

**I. THE COMPLAINT IS DEFICIENT ON ITS FACE AND SHOULD BE DISMISSED PURSUANT TO RULES 9(B) AND 12(B)(6) WITHOUT REFERENCE TO ANY OF THE DOCUMENTS PLAINTIFF ASSERTS ARE OUTSIDE THE SCOPE OF THE COMPLAINT.**

Defendants stated in their Motion to Dismiss that due to the fatal pleading defects on the face of the Complaint, the Court could dismiss the Complaint without any reliance on the documents submitted with the Motion. *See* Opening Br., p. 10, n. 11. Rather than address those defects, plaintiff seeks to distract the Court by arguing that the Motion should be converted to one for summary judgment because Defendants have included documents allegedly not "integral" or "incorporated by reference" in the Complaint. Defendants address plaintiff's argument in Point II *infra*.

As a threshold matter, however, the Complaint is deficient on its face, fully warranting dismissal of this action. Defendants' Opening Brief – now undisputed by plaintiff – demonstrates that each of plaintiff's claims are fundamentally flawed for multiple reasons. For instance, the bald and conclusory fraud claims (whether consisting of common law fraud or fraudulent conveyance, or allegedly forming the basis for the breach of fiduciary duty, conspiracy, and RICO claims) all fail to comply with Rule 9(b). These claims are also insufficient as a matter of law because there are no facts showing fraudulent intent, and the Complaint does not cite one statement, fraudulent or otherwise, that any of the Defendants made upon which plaintiff purportedly relied, nor does it allege a fraudulent omission or any circumstances giving rise to a

duty to speak. The cavalierly-asserted RICO claim separately fails due to the lack of any specific allegations of racketeering activity and continuity. Finally, the conspiracy claims also fail because there are no allegations showing Defendants' knowing participation in any wrongful scheme. For these, and all the other reasons set forth in Defendants' unopposed Opening Brief, the Complaint is deficient as a matter of law and may be dismissed without reference to any other document.

## II. THE COURT MAY CONSIDER THE DOCUMENTS ATTACHED TO DEFENDANTS' MOTION BECAUSE THEY ARE INTEGRAL TO THE COMPLAINT AND/OR ARE INCORPORATED BY REFERENCE.

As demonstrated in Defendants' Opening Brief at Point I (pp. 8-10), the Court may consider the documents attached to Defendants' Motion because, contrary to plaintiff's assertion, they are integral to the Complaint and/or are incorporated by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Williams v. Deutsche Bank Sec. Inc.*, No. 04 Civ. 7588 (GEL), 2005 WL 1414435, *3 (S.D.N.Y. June 13, 2005).

Plaintiff acknowledges that "the decision whether to exclude the 'matters outside the pleading' or convert the Rule 12(b)(6) motion to a Rule 56 motion for summary judgment rests within the sound discretion of the district court." Cross-Motion, p. 2. Plaintiff also acknowledges in its Cross-Motion that Exhibits E through I to the Gould Declaration may be considered by the Court in ruling on Defendants' Motion because they are public filings of which the Court may take judicial notice. Cross-Motion, p. 4, n. 1.[3] However, plaintiff contends

---

[3] Plaintiff, however, takes issue with Exhibit D to the Gould Declaration, which consists of copies of certain Aircraft Chattel Mortgages publicly filed with the Federal Aviation Administration. Plaintiff acknowledges that the Court may take judicial notice of these documents because they are public filings but argues that the Court cannot consider the assertion that the aircraft referenced in the Chattel Mortgages are the same aircraft leased to TACA International Airlines, and were the subject of the TACA Litigation. In order to "verify" this assertion, one need only note that the MSN numbers for the planes identified in the FAA filed mortgages and the TACA Litigation opinion by Judge Batts are the same. *Compare* Gould Decl., Ex. D *with* Gould Decl., Ex. H (247 F. Supp. 2d 352, 352).

that Exhibits A through C to the Gould Declaration and the exhibits to the Grosz Declaration are

"outside the pleading" and therefore should not be considered by the Court on Defendants'

Motion. As demonstrated below, these documents *may* properly be considered by the Court.

### A. The Acceptance Agreement Is Central To The Allegations In Plaintiff's Complaint.

The Acceptance Agreement (Exhibit A to the Gould Declaration) is not only integral, it is

*central* to plaintiff's Complaint. The crux of the Complaint is an alleged fraudulent transfer

allegedly by virtue of a July 25, 2003 "Agreement." *See* Cplt., ¶¶ 15-16, 21, 26. In this regard,

the Complaint alleges the following:

- On [July 25, 2003] all funds in all bank accounts controlled by CS Aviation were wire transferred out of those accounts. The sum on deposit in the Operative Accounts as of July 25, 2003, prior to the wire transfers, was $21,077,460.74. Cplt., ¶15.

- The purpose and effect of the July 25, 2003 wire transfers was to prevent plaintiff Jet Star from executing on this Court's judgment which became collectible on that date. Cplt., ¶16.

- On July 25, 2003, CS Aviation entered into an agreement with defendant Deutsche Bank pursuant to which, *inter alia*, CS Aviation assigned to Deutsche Bank the right to control and retain any proceeds from both the Jet Star Litigation and the TACA Litigation. Cplt., ¶21.

- The wire transfers described in paragraph 16 above *were fraudulent transfers* maliciously and deliberately effectuated by defendants Soros, Chatterjee, Deutsche Bank, Morgan Stanley, MB, Bingham, and Akin. Cplt., ¶26 (emphasis added).

- The wire transfers of July 25, 200[3] . . . unjustly enriched defendants . . . at the expense of plaintiff Jet Star . . . Cplt., ¶30.

Plaintiff's contention that the Acceptance Agreement is anything but central to its Complaint is

flatly contradicted by the Complaint itself.

In its Cross-Motion, plaintiff attempts to sidestep the issue of whether it relied upon the

Acceptance Agreement in drafting the Complaint. However, it is quite obvious from the face of

the pleading that plaintiff did just that. As Defendants point out in their Opening Brief, plaintiff

cites to the penny the $21,077,460.74 on deposit in the "Operative Accounts" (Cplt., ¶15, Gould

Decl, Ex. A., §II ¶1(g)) and the exact dollar amount, $594,337.93, transferred into an escrow account, provided for in an Escrow Agreement attached as Exhibit A to the Acceptance Agreement, to make certain payments (Cplt., ¶16, Gould Decl., Ex. A, §III, ¶2).[4]

Even case law cited by plaintiff in its Cross-Motion supports the fact that plaintiff cannot shield its Complaint from dismissal merely by not attaching or identifying the documents upon which it relies. *See Bowens v. Aftermath Entertainment*, 254 F. Supp. 2d 629, 639 (E.D. Mich. 2003) ("If … the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit. … Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document.") (internal citations and quotations omitted); *see also Belin v. Weissler*, No. 97 Civ. 8787 (RWS) 1998 WL 391114, *4 (S.D.N.Y. July 14, 1998) (same). Therefore, it is irrelevant that plaintiff chose not to *identify* completely the July 25, 2003 "Agreement," specifically referenced in paragraph 21 of its Complaint, as what is actually the July 25, 2003 "Acceptance Agreement." The document is not "outside the pleading" and may be considered by this Court on Defendants' Motion.

## B. The Credit Agreement and Pledge Agreement May Also Be Considered By This Court on Defendants' Motion to Dismiss.

The documents attached to the Gould Declaration as Exhibits B and C (the Credit Agreement[5] and Pledge Agreement, respectively), are properly submitted on Defendants' Motion because they are incorporated by reference in the Acceptance Agreement (which is plainly

---

[4] Plaintiff's assertion that Defendants "do not know how plaintiff's counsel learned the dollar amount transferred," is pure evasion. The fact is, plaintiff's counsel had the Acceptance Agreement in her possession at the time she drafted the Complaint and does not deny that it was used it to form the basis of plaintiff's allegations.

[5] Plaintiff takes issue with the fact that Defendants attached to the Gould Declaration only "selected" exhibits to the Credit Agreement. Defendants did this in the interest of not overburdening the Court with excess paper and information not relevant to this Motion. However, Defendants are more than willing to provide the Court with a complete set of all exhibits to the Credit Agreement if necessary.

integral to the Complaint as demonstrated in Point II(A), *supra*). *See Williams*, 2005 WL 1414435, at *3 (where an agreement is referenced in the complaint, contractual documents could be considered "along with the other documents [the contract] incorporates by reference.").

Paragraph 1 of the Acceptance Agreement states that: "Reference is hereby made to (a) the Credit Agreement, dated as of September 24, 1999 ... (c) the Pledge Agreement dated as of September 24, 1999 . . . . Capitalized terms used herein without definition have the meanings assigned to such terms, directly or by reference, in the Pledge Agreement or the Credit Agreement, as applicable." *See* Gould Decl., Ex. A, §I, ¶1. Therefore, the Acceptance Agreement must be read in conjunction with both the Credit Agreement and the Pledge Agreement. *See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997) ("[u]nder general principles of contract law, a contract may incorporate another document by making clear reference to it and describing it in such terms that its identity may be ascertained beyond doubt.") *citing* 4 Williston on Contracts § 628, at 903-04 (3d ed. 1961).

C.   **The Trust Agreements Attached To The Grosz Declaration Are Integral To Plaintiff's Complaint Against Wells Fargo.**

Plaintiff likewise objects to this Court's considering the documents (three trust agreements) attached to the Grosz Declaration. We respectfully submit that these trust agreements are clearly integral to the Complaint, and thus are properly to be considered on Defendants' Motion. In the Complaint, plaintiff specifically alleges at paragraph 39 that Defendant Wells Fargo owed and breached a fiduciary duty "in its capacity as a trustee" to preserve for plaintiff an amount ($3,432,867) equal to the default judgment specifically described in the Complaint as having been rendered in favor of Jet Star and against CS Aviation and Wells Fargo. *See* Cplt. ¶ 14. Obviously, Wells Fargo's trusteeship role in the trusts with

respect to which the default judgment was entered,[6] and accordingly the trust agreements themselves, are "integral" to the Complaint and particularly to its Seventh Cause of Action, asserted against Wells Fargo.[7]

## III. THE COURT CAN DECIDE DEFENDANTS' MOTION WITHOUT DISCOVERY BASED ON THE DOCUMENTS ATTACHED TO THE DECLARATIONS.

Where it is clear from the pleading and documents incorporated therein that plaintiff cannot sustain any cause of action against any of the Defendants (not to mention the fundamental pleading deficiencies that plague the Complaint), Defendants' motion may be decided in their favor without granting plaintiff leave to take discovery. *See In Re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 60-61 (2d Cir. 1998) (affirming denial of plaintiff's motion to convert 12(b)(6) motion into a summary judgment motion because defendant was entitled to dismissal on the pleadings and further held that "no further documents could save the [plaintiffs'] claims from dismissal.").

---

[6] Indeed, as fully set forth in Defendants' Opening Brief, in Point III(G) (p. 31), the default judgment on which plaintiff bases its entire case has been entered -- in an amended form ordered by Judge Batts -- against Wells Fargo "solely in its capacity as Owner-Trustee." The trust agreements attached as exhibits to the Grosz Declaration are the governing documents for these same trusts, in each of which Wells Fargo is the sole trustee. Clearly the documents qualify as integral to the Complaint.

Plaintiff also objects at footnote 6 of its Cross-Motion to the assertions in the Grosz Declaration that (i) First Security Bank (the named trustee in each of the three trust agreements) was a predecessor to Wells Fargo, and that (ii) Wells Fargo was incorrectly sued herein in its individual capacity. It is hard to fathom why plaintiff objects to our explaining to the Court, as background information, how Wells Fargo came to hold the trusteeship position that plaintiff cannot and does not dispute. Furthermore, that Wells Fargo was sued herein in its individual capacity is evident from the caption of the instant Complaint naming Wells Fargo as a defendant without a limiting phrase such as "in its capacity as trustee." And the "legal conclusion" that suing Wells Fargo in such individual capacity was "incorrect..." is established by the amended default judgment referred to above, of which the Court can take judicial notice. *See* Gould Decl., Ex. F at *8.

[7] In its Cross-Motion, plaintiff observes more than once that while Defendants argued in their Opening Brief for why the Gould Declaration exhibits were properly cognizable on a motion to dismiss, no such argument was included with respect to exhibits to the Grosz Declaration. Wells Fargo did not believe that the integral nature of the attached trust agreements required any additional explanation. It is ironic that plaintiff, after criticizing Wells Fargo, now states at page 14 of its Cross-Motion that its views regarding the trust agreements "require no further discussion" – i.e., no explanation whatever – other than to suggest that the trust agreements are matters outside the pleadings "without a doubt."

In *Merrill*, the Second Circuit held that the district court properly denied a plaintiff's request to obtain further discovery where "further document discovery would not have affected the outcome." *Id.* Likewise, here, plaintiff has not shown and indeed cannot show that any additional discovery would invalidate the transfer of shares in partial satisfaction of a debt or would otherwise invalidate the written agreements that effected that transfer and about which plaintiff complains in its pleading.[8] As Defendants make clear in their Opening Brief, the July 25, 2003 transaction consisted of a secured creditor (Deutsche Bank) accepting collateral in partial satisfaction of its debt pursuant to U.C.C. §9-620. Opening Br., pp. 15-16. The documents attached to the Gould Declaration support this point without dispute. *See* Gould Decl., ¶2; Opposition, p. 5.[9] Thus, there is nothing further to discover. Therefore, this Court should render a decision in favor of Defendants and decline plaintiff's request to defer disposition of the motion pending any further discovery.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny plaintiff's Cross-Motion and dismiss the Complaint against them in its entirety and grant such other and further relief as the Court deems just and proper.

---

[8] Plaintiff's Cross-Motion is also flawed due to its failure to comply with Rule 56(f) of the Federal Rules of Civil Procedure, which requires plaintiff to provide an affidavit detailing "the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994). Plaintiff's failure to articulate what discovery is allegedly needed dooms its requests for conversion of Defendants' Motion into one for summary judgment and for discovery before that motion is decided. Plaintiff cannot demonstrate how further discovery can be reasonably expected to create an issue of fact where the unambiguous terms of the Acceptance Agreement, Credit Agreement, and Pledge Agreement indisputably establish the validity of the challenged transaction and refute allegations of a fraudulent transfer.

[9] Plaintiff's counsel does not deny that plaintiff obtained a copy of the Acceptance Agreement through post-judgment discovery taken in its prior litigation. In addition to receiving this document and others pursuant to a subpoena served upon Bingham, plaintiff also took the deposition of one of Bingham's partners involved in the July 25, 2003 transaction.

Dated: New York, New York
      October 17, 2005

Respectfully submitted,

BINGHAM McCUTCHEN LLP

By:/s/ Lauren C. Gould
    Robert M. Dombroff (RD 6902)
    Mark M. Elliott (ME 0840)
    Lauren C. Gould (LG 1995)
    Maryaneh Mona Simonian (MS 2654)
    399 Park Avenue
    New York, New York 10022
    (212) 705-7000
    *Attorneys for Defendants Deutsche Bank,*
    *Trust Americas, Morgan Stanley CS Aviation*
    *Holdings LLC, MB Statutory Trust and*
    *Bingham McCutchen LLP*

PATTERSON BELKNAP WEBB & TYLER,
LLP

By:/s/ Kenneth J. King
    Kenneth J. King (KK 3567)
    1133 Avenue of the Americas
    New York, New York 10036
    (212) 336-2555
    *Attorneys for Akin Gump Strauss Hauer &*
    *Feld LLP*

VEDDER, PRICE, KAUFMAN & KAMMHOLZ
P.C.

By:/s/ John C. Grosz
    John I. Karesh (JK 4280)
    John C. Grosz (JG 6081)
    805 Third Avenue
    New York, New York 10022
    (212) 407-6990
    *Attorneys for Wells Fargo Bank Northwest,*
    *N.A.*

FRIEDMAN KAPLAN SEILER & ADELMAN
LLP

By:/s/ Lance J. Gotko
    Eric Seiler (ES 5437)
    Lance J. Gotko (LG 5443)
    Mala Ahuja Harker (MH 7176)
    1633 Broadway
    New York, New York 10019
    (212) 833-1100
    *Attorneys for Sidley Austin Brown & Wood*
    *LLP*

BUTLER, FITZGERALD, FIVESON &
McCARTHY, P.C.

By:/s/ Raymond L. Fitzgerald
    Raymond L. Fitzgerald (RF 9526)
    David J. McCarthy (DM 7910)
    350 Fifth Avenue
    Suite 6215
    New York, New York 10118
    (212) 615-2200
    *Attorneys for George Soros*

MORRISON COHEN LLP

By:/s/ David A. Piedra
    David A. Piedra (DP 9693)
    909 Third Avenue
    New York, New York 10022
    (212) 735-8600

    *Of Counsel*
    Dustin F. Hecker
    Posternak Blankstein & Lund LLP
    800 Boylston Street
    Boston, MA 02199
    (617) 973-6131
    *Attorneys for Purnendu Chatterjee*

# **APPENDIX**

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 391114 (S.D.N.Y.)

**(Cite as: 1998 WL 391114 (S.D.N.Y.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
David W. BELIN, as Trustee of the David W. Belin
Living Trust, Plaintiff,
v.
Barry WEISSLER, Defendant.
**No. 97 Civ. 8787(RWS).**

July 14, 1998.
Goodkind Labaton Rudoff & Sucharow, New York
City, by Joseph H. Einstein, of counsel, for plaintiff.

Jay Goldberg, P.C. and Michael G. Berger, New
York City, by Debra A. Karlstein, Scott Lucas, of
counsel, for defendant.

OPINION

SWEET, J.

*1 Defendant Barry Weissler ("Weissler") has
moved for a dismissal of the complaint (the
"Complaint") of plaintiff David W. Belin, as
Trustee of the David W. Belin Living Trust
("Belin") pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure for failure to state a claim
upon which relief can be granted. For the reasons
set forth below, Weissler's motion to dismiss will be
granted.

*The Parties*

Belin, a citizen of Iowa, invested in The Busker on
The Roof Limited Partnership Company (the
"Limited Partnership").

Weissler, a citizen of New York, is the President of

Busker Management, Inc., which is the general
partner of the Limited Partnership. Together with
his wife, Fran Weissler, Weissler directly or
indirectly owns all or a significant portion of the
stock of Busker Management, Inc.

*Prior Proceedings*

On November 25, 1997, Belin filed a complaint
alleging that he had been induced to invest in the
Limited Partnership as the result of a false and
fraudulent representation made to him by Weissler.
The instant motion was received February 17, 1998.
Oral arguments were heard on May 6, 1998, at
which time the motion was deemed fully submitted.

*Facts*

In considering a motion to dismiss, the facts
alleged in the complaint are presumed to be true
and all factual inferences must be drawn in the
plaintiff's favor and against the defendants. *See
Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct.
1683, 40 L.Ed.2d 90 (1974); *Mills v. Polar
Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993)
; *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989);
*Dwyer v. Regan,* 777 F.2d 825, 828-29 (2d
Cir.1985). Accordingly, the factual allegations
considered here and set forth below are taken from
Belin's complaint and do not constitute findings of
fact by the Court. They are presumed to be true only
for the purpose of deciding the present motion.

According to Belin, he was defrauded into
investing $100,000 in the Limited Partnership
which was formed to produce *Busker Alley,* a
musical play designed as a star vehicle for Tommy
Tune, a widely known Broadway star.

Belin met Weissler at a dinner party shortly prior to
December 12, 1994. At that time, Weissler
attempted to interest Belin in investing in *Busker
Alley,* and Belin expressed such an interest. Shortly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 2

Not Reported in F.Supp., 1998 WL 391114 (S.D.N.Y.)

**(Cite as: 1998 WL 391114 (S.D.N.Y.))**

thereafter, Weissler and his wife sent Belin certain promotional materials and financial projections for *Busker Alley.* Weissler contacted Belin again around January 1, 1995, and asked if Belin was still interested in *Busker Alley.* During that conversation, Belin asked Weissler what insurance coverage had been secured in the event Tommy Tune was unable to perform. Weissler responded that the insurance was in the approximate amount of $5.8 million.

In early February 1995, Weissler again contacted Belin about *Busker Alley,* and Belin advised Weissler that he remained undecided about making the investment. In an effort to encourage Belin, Weissler provided information concerning the last eight shows he and his wife had produced and the profits earned by the investors. When Belin spoke with Weissler yet again, Weissler called Belin's attention to the track record of his previous productions. During the course of that conversation, and relying upon the representations Weissler had made, including the representation as to insurance, Belin reached a preliminary decision to invest $100,000 in the Limited Partnership and so advised Weissler.

**\*2** In early March 1995, Belin continued to have concerns regarding the investment. Weissler again represented to Belin that there was $5.8 million of insurance on Tommy Tune. When asked by Belin how long Tommy Tune was committed to star in the show, Weissler answered that an eighteen-month contract had been signed. After a few days, based on Weissler's assurances that there was an insurance policy of $5.8 million in effect in the event of Tommy Tune's inability to perform and the commitment of Tommy Tune to star in the show, Belin invested $100,000 to become a limited partner in the Limited Partnership.

On or shortly after October 1, 1995, Tommy Tune suffered a serious injury which resulted in his inability to perform. The production was then closed and substantial losses were sustained by the Limited Partnership.

Subsequently, Belin learned that only $3.5 million in insurance had been secured, and that the insurers

had denied liability. The dispute between the Limited Partnership and the insurers is the subject of an action pending in the Supreme Court of the State of New York entitled, *Busker on the Roof Limited Partnership Co. v. Lloyd's of London Underwriters,* Index No. 603759/96 (the "Insurance Action"). In the Insurance Action, the Limited Partnership has asserted causes of action of breach of contract, breach of fiduciary duty, and negligence and professional malpractice against its insurance broker, DeWitt Stern, for failing to procure insurance coverage in the amount of $5.8 million, as DeWitt Stern was retained to do. The complaint in the Insurance Action reveals that a policy of insurance on Tommy Tune was not issued until June 8, 1995, and that policy was only in the sum of $3 .5 million.

Based on the allegations above, Belin claims he was induced to invest $100,000 in the Limited Partnership by the false statements made by Weissler regarding the fact that an insurance policy had been issued and that it was in the amount of $5.8 million. Weissler induced the investment in order to reduce the amount that he directly or indirectly had at risk as his investment in the Limited Partnership.

*Discussion*

**I. Legal Standards**

**A. Rule 12(b)(6)**

In deciding the merits of a motion to dismiss for failure to state a claim, all material allegations composing the factual predicate of the action are taken as true, for the court's task is to "assess the legal feasibility of the complaint, not assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)). Thus, where it is beyond doubt that plaintiff can prove no set of facts in support of his or her claim which would warrant relief, the motion for judgment on the pleadings must be granted. *See H.J. Inc. v. Northwestern Bell*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1998 WL 391114 (S.D.N.Y.)

**(Cite as: 1998 WL 391114 (S.D.N.Y.))**

*Tel. Co.,* 492 U.S. 229, 250, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 335 U.S. 41, 45-46 (1957).

**\*3** Additionally, on a Rule 12(b)(6) motion, consideration is limited to the factual allegations in the complaint, "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *see Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47-48 (2d Cir.1991).

**B. *Fraud Under New York Law***

There are five elements necessary to sustain a claim of fraud under New York law: (1) misrepresentation of a material fact; (2) the falsity of that misrepresentation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and (5) damage caused by such reliance. *May Dep't Stores Co. v. International Leasing Corp.,* 1 F.3d 138, 141 (2d Cir.1993); *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970-71 (2d Cir.1987); *Red Ball Interior Demolition Corp. v. Palmadessa,* 874 F.Supp. 576, 584 (S.D.N.Y.1995).

Additionally, in a diversity action alleging fraud, the plaintiff must comply with the heightened pleading standard of Rule 9(b), Fed.R.Civ.P., which requires that the circumstances constituting the fraud must be stated with particularity. *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir.1994); *In re Time Warner, Inc. Sec. Litig.,* 9 F.3d 259, 265 (2d Cir.1993); *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444-45 (2d Cir.1971) . The pleading must be sufficiently particular to serve the three goals of Rule 9(b), which are (1) to provide a defendant with fair notice of the claims against him; (2) to protect a defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike

suits. *See Di Vittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987); *O'Brien v. Price Waterhouse,* 740 F.Supp. 276, 279 (S.D.N.Y.1990), *aff'd,* 936 F.2d 674 (2d Cir.1991).

**II. *The Investment Documents Executed By Belin May Be Considered***

In support of the instant motion, Weissler has submitted various investment documents executed by Belin at the time of his investment in the Limited Partnership: a Subscription Representation Agreement (the "Subscription Agreement"), the Busker on the Roof Limited Partnership Agreement, dated August 18, 1994 (the "Partnership Agreement"), and an Investor Suitability Questionnaire (the "Suitability Questionnaire") (collectively, the "Investment Documents"). The Investment Documents evidence that Belin represented in writing that he relied solely on the Partnership Agreement in making the decision to invest in the Limited Partnership and that he understood the risks of such an investment. According to Belin, consideration of the Investment Documents on a motion to dismiss is improper.

**\*4** On a motion to dismiss, a court may consider the complaint and "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *International Audiotext Network v. American Telephone And Telegraph Co.,* 62 F.3d 69, 72 (2d Cir.1995) ( *quoting Cortec Indus.,* 949 F.2d at 47). However,
"when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.
*Id.* (alternation in original) (*quoting Cortec Indus.,* 949 F.2d at 47). If courts lacked authority to consider documents integral to a complaint, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Dykes v. Southeastern Pa. Transp. Auth.,* 68 F.3d 1564,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 391114 (S.D.N.Y.)

**(Cite as: 1998 WL 391114 (S.D.N.Y.))**

1566 n. 3 (3d Cir.1995).

Consideration of integral documents is particularly appropriate when the plaintiff has notice of those documents:

> A finding that plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since ... the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason--requiring notice so that the party against whom the motion to dismiss is made may respond--that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.

*Cortec Indus.,* 949 F.2d at 48.

In *Cortec Industries,* the Second Circuit held that the district court was entitled to consider, in the motion to dismiss a securities fraud claim, the stock purchase agreement, offering memorandum, and warrants of which the plaintiffs had knowledge of and upon which they relied in bringing suit. *Id.* at 47-48.

Similarly, in the instant case, consideration of the Investment Documents is appropriate because Belin undisputedly had notice of them when he filed this action (and when Weissler filed his motion), and he must rely upon them to prove his interest in the Limited Partnership. In fact, that the Investment Documents are integral to Belin's complaint is further evidenced by his express reliance upon them in his opposition papers. For example, Belin specifically cites to the Partnership Agreement in contending that his allegations of scienter are sufficient.

Contrary to the authority cited by Belin, this is not a case of Weissler attempting to submit affidavits or "copies of correspondence to which no reference had been made in the complaint." *Newman &*

*Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660 (2d Cir.1996). Rather, the Investment Documents are essential documents that form the basis of Belin's claim. As such--and particularly because Belin had actual notice of them--the Investment Documents will be considered in determining whether or not Belin has stated a claim upon which relief may be granted.

**III. *The Complaint Will Be Dismissed Because Belin Has Not Adequately Pleaded Reasonable Reliance***

**\*5** Belin contends that based on Weissler's oral representations that there was a $5.8 million insurance policy to protect investors in the event of Tommy Tune's inability to perform, he invested $100,000 in the Limited Partnership. Belin's claim, however, cannot be sustained because he has insufficiently pleaded reasonable or justifiable reliance.

Under New York law, Belin must establish actual, direct reliance upon the oral representations made by Weissler regarding the insurance on Tommy Tune. *See Turtur v. Rothschild Registry Int'l, Inc.,* No. 92 Civ. 8710, 1993 WL 338205, at *6 (S.D.N.Y. Aug.27, 1993); *Golden Budha Corp. v. Canadian Land Co.,* 931 F.2d 196, 202 (2d Cir.1991); *Devaney v. Chester,* 709 F.Supp. 1255, 1264 (S.D.N.Y.1989). A close study of Belin's complaint indicates that Weissler's oral representations may not have been the catalyst for Belin's investment.

According to the complaint, shortly after January 1, 1995, Weissler contacted Belin and inquired whether Belin was still interested in the investment. In that conversation Weissler indicated that there was $5.8 million of insurance in place. Belin remained undecided. Weissler again contacted Belin in early February 1995, and Belin advised Weissler that he had not yet decided whether or not to invest in the Limited Partnership. Belin asserts that Weissler delivered to him information regarding the last eight shows Weissler and his wife had produced and the profits earned by investors. Shortly thereafter, Weissler again contacted Belin

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 391114 (S.D.N.Y.)

(Cite as: 1998 WL 391114 (S.D.N.Y.))

and reiterated the financial information concerning his previous eight productions. As set out in the complaint, "[d]uring the course of that conversation, and relying upon the representations ... Weissler previously made, including the representation as to insurance, [Belin] reached a preliminary decision to invest $100,000 in the Limited Partnership; and so advised ... Weissler." (Compl.¶ 20). According to Belin, concerns regarding insurance lingered, and he finally invested in the Limited Partnership because of Weissler's representations regarding the $5.8 million insurance policy.

The complaint thus casts doubt as to whether it was the insurance representation or the track record of profit made by investors of Weissler's previous productions that caused Belin to invest.

Even if Belin's allegations of actual, direct reliance are adequately pleaded, the inquiry does not stop there. Under New York law, "the asserted reliance must be found to be justifiable under all the circumstances before a complaint can be found to state a cause of action in fraud." *Danann Realty Corp. v. Harris,* 5 N.Y .2d 317, 322, 157 N.E.2d 597, 599-600, 194 N.Y.S.2d 599, 603 (1959); *see Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1541 (2d Cir.) (stating that "in order to sustain a claim of fraud, a party must establish, *inter alia,* justifiable reliance"), *cert. denied,* 522 U.S. 864, 118 S.Ct. 169, 139 L.Ed.2d 112 (1997); *Palmadessa,* 874 F.Supp. at 588 (dismissing common law fraud claim in part because plaintiff failed to show that "he was justified in taking action in reliance" upon defendant's representations"). Belin's reliance was neither justified nor reasonable.

**\*6** The Second Circuit addressed the requirement for reasonable reliance in *Lazard Freres,* 108 F.3d at 1542-43. The defendant in that case asserted as an affirmative defense to the plaintiff's breach of contract claim that it reasonably relied upon plaintiff's characterization of the contents of a report that defendant considered material to its decision to enter into a deal. *Id.* Defendant further claimed that plaintiff had structured the deal in such a way that defendant had to rely on plaintiff's characterization and commit to the deal before it

had the opportunity to review the report itself. *Id.* at 1543. In fact, defendant alleged that it was forced to rely on plaintiff's representations or lose the chance to be a part of the transaction. Nonetheless, the Second Circuit found that the defendant in *Lazard Freres* "was under a further duty to protect itself from misrepresentation [and] could easily have done so by insisting on an examination of the [report] as a condition of closing." *Id.*

*Lazard Freres* imposes a duty on sophisticated investors to obtain documentation of information material to their investment decisions:

> [W]here, as here, a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation ..., he may truly be said to have willingly assumed the business risk that the facts may not be as represented. Succinctly put, a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament.

*Id.* (*quoting Rodas v. Manitaras,* 159 A.D.2d 341, 343, 552 N.Y.S.2d 618, 620 (1st Dep't 1990)).

Belin, by his own admission, is a sophisticated investor who represented that he had "sufficient knowledge and experience in financial and business matters so as to be capable of evaluating the merits and risks associated with investing in the [Limited] Partnership." (Suitability Questionnaire, at 9-10.) As stated in *Lazard Freres,* Belin had an obligation--if, as Belin contends, he was only investing in the Limited Partnership based on representations that Tommy Tune was insured for $5.8 million--to secure and review a copy of the insurance policy upon which his investment decision was allegedly premised. *See Lazard Freres,* 108 F.3d at 1543.

Belin asserts that *Lazard Freres* is inapplicable because it stands for the proposition that ready access to information may undercut a claim of reliance. Belin quotes the following passage to support his interpretation of *Lazard Freres* : "Finally, and most importantly, *all* of these cases involved situations in which the relevant facts were

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

easily accessible to the relying party." *Id.* at 1542.

However, in the preceding passage, the Second Circuit was describing the cases upon which the plaintiff relied and explaining why plaintiff's citation to them was problematic. *Id.* at 1541-42. The court initially stated that "[i]t is well established that '[w]here sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance.' " *Id.* at 1541 (*quoting Grumman Allied Indus., Inc. v. Rohr Indus., Inc.,* 748 F.2d 729, 737 (2d Cir.1984)). In *Lazard Freres,* the court noted that the defendant *did not* have access to the relevant information. Rather, the information was exclusively known to the plaintiff. *Id.* at 1543. Therefore, the rule stated above (and to which the plaintiff cited) was not easily transferable to the situation faced by the Second Circuit. Nonetheless, even absent easy access to the information, the *Lazard Freres* court found that the defendant was under a further duty to protect itself by, for example, insisting that the information be provided to it as a condition to closing the deal. *Id.*

*7 The instant case involves an even weaker claim of reasonable reliance than did *Lazard Freres* because Belin *had* access to the information upon which he purportedly relied--he could have asked to see the insurance policy. By proceeding to make an investment without asking for a copy of the policy, Belin "willingly assumed the business risk" that the amount of insurance coverage was as represented by Weissler.

Under *Lazard Freres,* even if Belin did not have ready access to the relevant information, Belin's reliance would not be reasonable because, as a sophisticated investor, he should have confirmed that $5.8 million of insurance existed and not relied on Weissler's oral representations.

Furthermore, at the time Belin invested in the Limited Partnership, he executed a written agreement explicitly disclaiming reliance on oral representations. [FN1] As Weissler points out,

rather than request a copy of the insurance policy, Belin represented in writing that he "has been provided an opportunity to obtain any additional information concerning the Offering, the Partnership and all other information," he "has been given the opportunity to ask questions of, and receive answers from, the General Partner concerning the terms and conditions of the Offering and other matters pertaining to this investment, and [he] has been given the opportunity to obtain such additional information necessary to verify the accuracy of the information contained in the Partnership Agreement or which has otherwise been provided in order for him to evaluate the merits and risks of an investment in the Partnership...." (Subscription Agreement, § 2.1(c)(ii)-(iii).)

> FN1. Once again, this represents a weaker claim of reliance than did *Lazard Freres* because no disclaimer was present in that case.

Indeed, in the Subscription Agreement, Belin expressly represented that he "relied solely ... on the information contained in the Partnership Agreement," and that "[n]o representations or warranties, other than as set forth in the Partnership Agreement, have been made" to him. (*Id.,* § 2.1(c)(i), (h).) Additionally, the Partnership Agreement Belin signed specifically provided that it "incorporates the entire agreement among the parties." (Partnership Agreement, at 36.) As the Second Circuit noted in *Lazard Freres,* "where a party specifically disclaims reliance upon a representation in a contract, it cannot later assert that it was fraudulently induced to enter into the contract by the very representation it has disclaimed reliance upon." 108 F.3d at 1542; *see Warner Theatre Assoc. Ltd. Partnership v. Metropolitan Life Ins. Co.,* 97 Civ. 4914, 1997 WL 685334, at *3 (S.D.N.Y. Nov.4, 1997); *Danann,* 5 N.Y.2d at 320-22, 157 N.E.2d at 598-600, 184 N.Y.S.2d at 601-03.

Belin asserts that the disclaimer and merger clauses are ineffective to vitiate his fraud claim because they are general and not specific, and broad, general disclaimers do not negate the element of reliance.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 391114 (S.D.N.Y.)

(Cite as: 1998 WL 391114 (S.D.N.Y.))

Page 7

Belin cites to *Northwestern National Insurance Co. v. Alberts,* 717 F.Supp. 148, 154 (S.D.N.Y.1989), where the court stated that the "disclaimer clauses [plaintiff] invoke[d] ...--regarding 'any representations or recommendations' or 'any information or advice'--[were] far too general to deny the ... allegations of reliance."

*8 The instant disclaimer, however, differs from the broad disclaimers cited by Belin. For example, in *Alberts* the disclaimers at issue were as follows: "neither [plaintiff] nor any of its employees or agents have made any representations or recommendations to me," "nor has [plaintiff] offered or provided any information or advice with respect to the advantages or disadvantages" of the transaction. *Alberts,* 717 F.Supp. at 154. Here, Belin's representations went beyond the general merger clause in the Partnership Agreement (stating that the document "incorporates the entire agreement among the parties") and the broad disclaimer in the Subscription Agreement (stating "[n]o representations or warranties, other than as set forth in the Partnership Agreement, have been made to [Belin] by the Partnership, the General Partner, or any officer, employee, agent, or affiliate of either of them").

Specifically, Belin completed a detailed Suitability Questionnaire in order to qualify as an investor in which Belin proclaimed himself to be a sophisticated investor, representing that he had read the Partnership Agreement and Subscription Agreement; that he understood the nature and risks of his investment; and that he had sufficient knowledge and experience to evaluate those risks because he has J.D. and M.B.A. degrees and manages over $40 billion in assets as a Trustee for Kemper Mutual Funds. More importantly, Belin specifically disclaimed reliance on any oral representations and expressly represented that he had been given an opportunity not only to obtain whatever additional information he required, but also to verify the accuracy of that information. [FN2] Belin executed the disclaimers subsequent to the time Weissler orally represented the amount of the insurance coverage. Having explicitly represented that he had an opportunity to verify the

accuracy of information provided to him, Belin cannot now be heard to complain that he relied on information that he declined to verify, although he could have determined the amount of insurance secured for Tommy Tune simply by asking for a copy of the policy.

FN2. Section 2.1 of the Subscription Agreement states:
[Belin] has been furnished copies of the Partnership Agreement ..., has carefully read the Partnership Agreement, ... and has relied solely (except as indicated [herein] ) on the information contained in the Partnership Agreement;
[Belin] has been provided an opportunity to obtain any additional information concerning the Offering, the Partnership and all other information to the extent the Partnership or the General Partner possesses such information or could acquire it without unreasonable effort or expense;
[Belin] has been given the opportunity to ask questions of, and receive answers from, the General Partner concerning the terms and conditions of the Offering and other matters pertaining to this investment, and has been given the opportunity to obtain such additional information necessary to verify the accuracy of the information contained in the Partnership Agreement or which has otherwise been provided in order for him to evaluate the merits and risks of an investment in the Partnership....

In light of the allegations in the complaint, Belin's own express representations and disclaimers, Belin cannot, as a matter of law, establish that he reasonably relied upon the oral misrepresentation by Weissler when he invested in the Limited Partnership.

**IV. *Leave To Amend Is Denied***

Belin requests leave to amend his complaint. Additionally, he states that he will add a claim for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 391114 (S.D.N.Y.)

**(Cite as: 1998 WL 391114 (S.D.N.Y.))**

negligent misrepresentation if granted leave.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." The federal courts, however, have interpreted Rule 15 to permit such amendments only when (1) the party seeking the amendment has not unduly delayed, (2) when that party is not acting in bad faith or with a dilatory motive, (3) when the opposing party will not be unduly prejudiced by the amendment, and (4) when the amendment is not futile. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see Mackensworth v. S.S. Am. Merchant,* 28 F.3d 246, 251 (2d Cir.1994); *Prudential Ins. Co. v. BMC Indus., Inc.,* 655 F.Supp. 710, 711 (S.D.N.Y.1987).

**\*9** An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis. *See, e.g., S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979); *Freeman v. Marine Midland Bank-New York,* 494 F.2d 1334, 1338 (2d Cir.1974).

Given the discussion above, it has been established not only that Belin has failed to adequately plead reliance to support a claim of fraud, but also that he will not be able to do so if he were granted leave to amend. The Investment Documents executed at the time of Belin's investment, as well as the complaint itself, negate any claim of reasonable reliance on Weissler's oral representations. Therefore, leave to amend would be futile.

Moreover, for the same reasons, Belin cannot state a viable claim for negligent misrepresentation. Like a claim of fraud, negligent misrepresentation requires reasonable reliance. *See Kimmell v. Schaeffer,* 89 N.Y.2d 257, 263- 64, 675 N.E.2d 450, 454, 652 N.Y.S.2d 715, 719 (1996); *Heard v. New York,* 82 N.Y.2d 66, 74-75, 623 N.E.2d 541, 545-46, 603 N.Y.S.2d 414, 418-19 (1993).

Belin's claim is dismissed without leave to amend. His rights with respect to his investment, like the rights of the other investors in the Limited

Partnership, will be determined by the outcome of the Insurance Action.

### Conclusion

For the reasons set forth above, Weissler's motion to dismiss pursuant to Rule 12(b)(6) is granted.

It is so ordered.

Not Reported in F.Supp., 1998 WL 391114 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:97cv08787 (Docket)
(Nov. 25, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.