UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

JET STAR ENTERPRISES, LTD.,    :

   :

      Plaintiff,    :   05-CV-6585 (HB)

   :

   - against -    :

   :   **Filed Electronically**

GEORGE SOROS, PURNENDU CHATTERJEE,    :
DEUTSCHE BANK TRUST COMPANY    :
AMERICAS, WELLS FARGO BANK    :
NORTHWEST, N.A., AKIN GUMP STRAUSS    :
HAUER & FELD LLP, BINGHAM McCUTCHEN    :
LLP, SIDLEY AUSTIN BROWN & WOOD LLP, and    :
MB STATUTORY TRUST,    :

   :

      Defendants.    :

   :

------------------------------------------------------------------- x

## DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS
## <u>THE FIRST AMENDED COMPLAINT</u>

### Submitted By:

**BINGHAM McCUTCHEN LLP**
**399 Park Avenue**
**New York, New York 10022**
**(212) 705-7000**
*Attorneys for Defendants Deutsche Bank Trust*
*Company Americas, MB Statutory Trust, and*
*Bingham McCutchen LLP*

**VEDDER, PRICE, KAUFMAN &**
**KAMMHOLZ, P.C.**
**805 Third Avenue**
**New York, New York 10022**
**(212) 407-6990**
*Attorneys for Wells Fargo Bank Northwest, N.A.*

**PATTERSON BELKNAP WEBB & TYLER,**
**LLP**
**1133 Avenue of the Americas**
**New York, New York 10036**
**(212) 336-2555**
*Attorneys for Akin Gump Strauss Hauer & Feld*
*LLP*

**FRIEDMAN KAPLAN SEILER & ADELMAN**
**LLP**
**1633 Broadway**
**New York, New York 10019**
**(212) 883-1115**
*Attorneys for Sidley Austin Brown & Wood LLP*

**BUTLER, FITZGERALD, FIVESON &**
**McCARTHY, P.C.**
**350 Fifth Avenue**
**Suite 6215**
**New York, New York 10118**
**(212) 615-2200**
*Attorneys for George Soros*

**MORRISON COHEN LLP**
**909 Third Avenue**
**New York, New York 10022**
**(212) 735-8600**

*Of Counsel*

**POSTERNAK BLANKSTEIN & LUND LLP**
**The Prudential Tower**
**800 Boylston Street**
**Boston, MA 02199**
**(617) 973-6131**
*Attorneys for Purnendu Chatterjee*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................. 4

ARGUMENT...................................................................................................... 8

I.   THE DOCUMENTS AND PUBLIC FILINGS
     UNDERLYING THE TRANSACTIONS AT ISSUE ARE
     COGNIZABLE ON A MOTION TO DISMISS PURSUANT
     TO RULE 12(B)(6) ................................................................................... 8

II.  PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR
     FAILURE TO STATE VIABLE CLAIMS FOR RELIEF
     PURSUANT TO RULE 12(B)(6) ............................................................. 10

     A.   The First And Second Causes Of Action Fail To State
          Claims For Fraudulent Conveyance Against Soros,
          Chatterjee, Deutsche Bank, Wells Fargo, MB Trust,
          And Akin. ...................................................................................... 10

          1.   Plaintiff Does Not, And Cannot Allege That It Is A
               Creditor Of the Entities That Owned And Conveyed
               The Cash Assets That Were Allegedly Transferred On
               July 25, 2003 ....................................................................... 11

          2.   The Alleged July 25, 2003 Transfer Of Cash Assets To
               Secured Lenders Is Not Actionable As A Fraudulent
               Conveyance .......................................................................... 11

          3.   Defendants Soros And Chatterjee Are Not Liable For
               The Alleged Fraudulent Transfer Of The Cash Assets
               Because Those Assets Were Not Transferred To Them ................. 12

     B.   The Fourth, Fifth And Ninth Causes Of Action Fail To
          State Claims For Intentional And Constructive
          Fraudulent Conveyance As Against Soros, Chatterjee,
          Deutsche Bank And Wells Fargo Because The TACA
          Litigation Proceeds Were Conveyed To A Secured
          Creditor Pursuant to Mortgages Filed With The FAA ............................. 14

          1.   Defendants Soros And Chatterjee Are Not Liable For
               The Alleged Fraudulent Transfer Of the TACA Claims
               Because Those Assets Were Not Transferred To Them ................. 16

     C.   The Third, Sixth, Fourteenth, Seventeenth And
          Eighteenth Causes Of Action For Unjust Enrichment
          Should Be Dismissed.................................................................... 16

          1.   Third Cause of Action (the July 25, 2003 Transaction).................. 17

i

2.     Sixth Cause of Action (the TACA Proceeds) ................................. 17

3.     The Fourteenth Cause Of Action For Unjust Enrichment Against Soros And Chatterjee Fails As A Matter Of Law ............................................................................. 18

4.     The Seventeenth Cause Of Action For Fails To State A Claim For Unjust Enrichment Against Bingham ............................ 19

5.     The Third And Eighteenth Causes Of Action Fail To State A Claim Against Akin For Unjust Enrichment ..................... 20

D.    The Seventh And Tenth Causes Of Action Fail To State Claims For Breach Of Fiduciary Duty Or For Negligence Against Wells Fargo ................................................................ 20

1.     Wells Fargo Had No Duty (Nor Any Right) To Pay Any Proceeds of the TACA Litigation to Jet Star Since Those Proceeds Belonged to the Beneficiaries of Separate Trusts ........................................................................... 21

2.     Even if CS Aviation Were Actually a Beneficiary of One or More of the Aircraft Trusts, Wells Fargo Would Still Owe No Fiduciary Duty To Jet Star ............................ 22

3.     Wells Fargo's Acting at the Direction of the Party Alleged to Be its Trust Beneficiary Cannot Give Rise to a Claim for Breach of Fiduciary Duty ......................................... 24

E.    The Eighth Cause of Action Against Deutsche Bank, Bingham and Sidley for Aiding and Abetting Wells Fargo's Alleged Breach of Fiduciary Duty Fails As A Matter of Law ............................................................................................ 25

F.    The Eleventh Cause of Action Fails to State A Claim For Declaratory Judgment/Piercing the Corporate Veil Against Soros and Chatterjee ..................................................................... 26

G.    The Twelfth Cause of Action Fails To State A Claim For Conversion Against Soros and Chatterjee ........................................... 28

H.    The Thirteenth Cause of Action Fails To State A Claim For "Multiple Acts of Fraudulent Conveyance" Against Soros and Chatterjee ..................................................................... 30

I.    The Fifteenth Cause of Action Fails To State Claims For Fraud and Fraudulent Inducement Against Soros, Chatterjee and Wells Fargo ...................................................................... 32

NYDOCS/1232731.8

# TABLE OF CONTENTS

(continued)

J.      The Sixteenth Cause of Action Fails To State A Claim For Promissory Estoppel Against Soros, Chatterjee and Wells Fargo.................................................................................. 33

K.      All Causes of Action Against Wells Fargo Should Be Dismissed For the Added Reason That They Are Asserted Against Wells Fargo In Its Individual Capacity, Whereas the Default Judgment in Favor of Jet Star Is Entered Against Wells Fargo Solely In Its Capacity as Owner-Trustee ...................................................... 35

CONCLUSION ............................................................................................. 36

*Al Sayegh Bros. Trading (LLC) V. Doral Trading & Export, Inc.*,
219 F. Supp. 2d 285 (E.D.N.Y. 2002) ............................................................. 34

*In re Ames Dep't Stores, Inc.*, 274 B.R. 600 (Bankr. S.D.N.Y. 2002).................. 30

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
No. 03 Civ. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22,
2003), *aff'd*, 110 Fed. Appx. 191 (2d Cir. 2004) ....................................... 34, 35

*Burgos v. Airday*, No. 00 Civ 4288 (VM),
2001 WL 995342 (S.D.N.Y. Aug. 29, 2001) ..................................................... 9

*Celi v. Canadian Occidental Petroleum Ltd.*,
804 F. Supp. 465 (E.D.N.Y. 1992) ................................................................. 34

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ............................... 8

*Chira v. Columbia Univ.*,
289 F. Supp. 2d 477 (S.D.N.Y. 2003) .............................................................. 8

*Citadel Mgmt. Inc. v. Telesis Trust Inc.*,
123 F. Supp. 2d 133 (S.D.N.Y. 2000) ............................................................ 30

*Citibank v. Plapinger*, 66 N.Y.2d 90 (1985) ......................................................... 33

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
949 F.2d 42 (2d Cir. 1991) ............................................................................. 8

*In re Currency Conversion Fee Antitrust Litig.*,
265 F. Supp. 2d 385 (S.D.N.Y. 2003) ............................................................ 26

*D'Accord Fin. Serv., Inc. v. Metsa-Serla Oy*, No. 98 Civ. 5847 (DLC),
1999 WL 58916, *4 (S.D.N.Y. Feb. 8, 1999).................................................. 35

*DDCLab Ltd. v. E.I. Du Pont De Nemours and Co.*, No. 03 CV 3654GBD,
2005 WL 425495, * 8 (S.D.N.Y. Feb. 18, 2005)............................................. 34

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
228 F.R.D. 508 (S.D.N.Y. 2005) ............................................................... 26, 27

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
343 F.3d 189 (2d Cir. 2003) .......................................................................... 33

iv

Page

*Estates of Florence H. Davis and Benjamin B. Davis*,
   284 N.Y.S.2d 414, 425 (N.Y. Surr. Ct. 1967) ................................................... 22

*FDIC v. Porco*,
   552 N.Y.S.2d 910 (1992) ...................................................................... 13, 14, 16

*Fletcher v. Alex, Inc.*, 68 F.3d 1451 (2d Cir. 1995) ............................................ 28

*Gallant v. Kanterman*,
   603 N.Y.S.2d 315 (1st Dep't 1993) ................................................................. 14

*Geren v. Quantum Chem. Corp.*,
   832 F. Supp. 728 (S.D.N.Y. 1993) ............................................................ 13, 16

*Gindi v. Silvershein*, No. 93 Civ. 8679 (LLS),
   93 Civ. 8680 (LLS), 1996 WL 194304 (S.D.N.Y. 1996) ................................. 33

*Hassett v. Goetzmann*, 10 F. Supp. 2d 181 (N.D.N.Y. 1998) ......................... 13, 16

*HBL Indus. v. Chase Manhattan Bank*, 45 B.R. 865 (S.D.N.Y. 1985) ................. 30

*High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420 (S.D.N.Y. 1988) ..................... 30

*In re IBJ Schroder Bank & Trust Co.*,
   706 N.Y.S.2d 114 (1st Dep't 2000) ................................................................. 23

*Jackson Nat'l Life Ins. Co. v. Litigator*, 949 F. Supp. 200 (S.D.N.Y. 1996) ......... 30

*Jet Star Enter., Ltd. v. CS Aviation Servs.*,
   No. 01 Civ. 6590 (DAB), 2004 WL 350733
   (S.D.N.Y. February 25, 2004) ............................................................... 5, 6, 31

*Kaufman v. Cohen*, 760 N.Y.S.2d 157 (1st Dep't 2003) ....................................... 25

*Kavowras v. N.Y. Times Co.*,
   328 F.3d 50 (2d Cir. 2003) ............................................................................. 9

*Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240 (S.D.N.Y. 1996) ....................... 25

*Lawrence v. Cohn*, 932 F. Supp. 564 (S.D.N.Y. 1996) ........................................ 23

*Lippe v. Bairnco Corp.*,
225 B.R. 846 (S.D.N.Y. 1998)..................................................................... 11, 14

*MacDraw, Inc. v. The CIT Grp. Equip. Finance, Inc.*,
157 F.3d 956 (2d Cir. 1998) ...........................................................12, 16, 17-18

*Meadowbrook- Richman, Inc. v. Associated Fin. Corp.*,
325 F. Supp. 2d 341 (S.D.N.Y. 2004) ............................................................ 29

*Martes v. USLIFE Corp.*,
927 F. Supp. 146 (S.D.N.Y. 1996) ................................................................. 20

*Marvin Inc. v. Albstein*, 386 F. Supp. 2d 247 (S.D.N.Y. 2005) ............................ 34

*Morrissey v. General Motors Corp.*,
21 Fed. Appx. 70 (2d. Cir. 2001)................................................................... 33

*Murray v. Miner*,
74 F.3d 402 (2d Cir. 1996) .......................................................................... 26

*Nat'l Bank of North Amer. v. Local 553*,
463 F. Supp. 636 (E.D.N.Y. 1978) ................................................................ 24

*Nat'l Ins. & Guar. Corp. Ltd. v. Vander Veer*,
322 N.Y.S. 2d 293 (N.Y. Sup. Ct. 1971) ........................................................ 24

*Oppenheimer-Palmieri Fund, L.P. v. Peat Marwick Main & Co.*,
802 F. Supp. 804 (E.D.N.Y. 1992) ................................................................ 10

*Peter Griffin Woodward, Inc. v. WCSC, Inc.*,
452 N.Y.S. 2d 599 (1st Dep't 1982)............................................................... 30

*Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing*,
53 F. Supp. 2d 199 (S.D.N.Y. 1999) ......................................................... 34, 35

*Ply\*Gem of Laurel, Inc. v. Lee*, 456 N.Y.S.2d 382 (1st Dep't 1982) ................... 32

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*,
317 F. Supp. 2d 301 (S.D.N.Y. 2003) .................................................. 17, 19, 20

*Schatz v. Rosenberg*, 943 F.2d 485 (4th Cir. 1991) ....................................... 26

Page

*Schwartz v. Teller*, 646 N.Y.S.2d 24 (2d Dep't 1996)............................................ 34

*Shanghai Changhong Int'l Trading Co., Ltd. v. K&D Logistics Co., Ltd.*,
    No. 99 CV. 4992IJG, 2002 WL 1732807
    (E.D.N.Y. July 19, 2002) ................................................................................ 12

*In Re Sharp Int'l Corp.*,
    403 F.3d 43 (2d Cir. 2005) ....................................................................... 25, 36

*Sobek v. Quattrochi*,
    No. 03 Civ. 10219 (RWS), 2004 WL 2809989
    (S.D.N.Y. December 8, 2004) ............................................................................ 9

*Soviero Bros. Contracting Corp. v. City of New York*,
    142 N.Y.S. 2d 508 (1st Dep't 1955) ................................................................ 33

*State of Colorado v. First Interstate Bank of Denver*,
    743 P.2d 449 (Colo. Ct. App. 1987) ................................................................ 23

*In re Trusts A&B*, 672 N.W.2d 912, (Minn. Ct. App. 2004).................................. 25

*Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*,
    599 N.Y.S.2d 816 (1st Dep't 1993)............................................................. 12, 36

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
    216 F. Supp. 2d 198 (S.D.N.Y. 2002) ............................................................. 27

*Wells Fargo Bank Northwest, N.A. v. TACA Int'l Airlines, S.A.*,
    247 F. Supp. 2d 352 (S.D.N.Y. 2002) ......................................................... 6, 34

*Wells Fargo Bank Northwest v. TACA Int'l Airlines*,
    315 F. Supp. 2d 347 (S.D.N.Y. 2003) ..................................................... *passim*

*Williams v. Deutsche Bank Sec., Inc.*,
    No. 04 Civ. 7588 (GEL), 2005 WL 1414435
    (S.D.N.Y. June 13, 2005).................................................................................. 9

*Yeterian v. Healther Mills, N.V., Inc.*, 583 N.Y.S. 2d 439 (1st Dep't 1992) ......... 29

*Zinaman v. USTS New York, Inc.*,
    798 F. Supp. 128 (S.D.N.Y. 1992) .................................................................. 27

**STATUTES**

49 U.S.C. § 40102(a)(15) .................................................................................7

Fed. R. Civ. P. 12(b)(6) ...................................................................................1

N.Y. CPLR § 214(4) ......................................................................................29

N.Y. Debt. & Cred. Law §§ 273 ....................................................................11

N.Y. Debt. & Cred. Law §§ 274 ....................................................................31

N.Y. Debt. & Cred. Law § 276 .................................................................10, 11

N.Y. Debt. & Cred. Law §§ 278-279 .............................................................11

N.Y. U.C.C. § 9-201 ................................................................................12, 15

N.Y. U.C.C. § 9-620(a)(1) ...................................................................5, 12, 17

**OTHER AUTHORITIES**

Shrank and Gough, *Equipment Leasing – Leveraged Leasing*,
    4th Ed. 1999, Rev. 2005, at § 17:4.2 (A), ...................................................7

Restatement (Second) of Trusts § 179 ...........................................................22

Defendants George Soros ("Soros"), Purnendu Chatterjee ("Chatterjee"), Deutsche Bank Trust Company Americas ("Deutsche Bank"), MB Statutory Trust ("MB Trust"), Bingham McCutchen LLP ("Bingham"), Wells Fargo Bank Northwest, N.A. ("Wells Fargo"), Akin Gump Strauss Hauer & Feld LLP ("Akin") and Sidley Austin Brown & Wood LLP ("Sidley") (together, the "Defendants") respectfully submit this consolidated memorandum of law in support of their Motion to Dismiss the Amended Complaint ("Cplt.") filed by Jet Star Enterprises, Ltd. ("plaintiff" or "Jet Star") for (i) failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and (ii) failure to plead fraud with particularity, as required by Fed. R. Civ. P. 9(b).

## PRELIMINARY STATEMENT

Plaintiff is an unsecured judgment creditor that is attempting to obtain a preference over an Article 9 secured creditor by asserting against a host of law firms, banks, individuals, and a trust claims that are insufficient as a matter of law and flatly contradicted by the transactional documents upon which the complaint relies as well as by public filings.

Plaintiff filed its initial complaint on July 19, 2005. The Defendants moved to dismiss all causes of action, as the Plaintiff had failed to plead fraud with particularity and to state viable causes of action, especially given the transactional documents at issue. Instead of responding to Defendants' motion, plaintiff sought to prevent this Court from reviewing the very agreement on which the plaintiff based its complaint by cross-moving to block the Court from considering it unless the Defendants' motion was converted to a summary judgment motion and deferred until the completion of discovery. At a conference held on November 3, 2005, the Court ordered plaintiff to respond to Defendants' motion on the merits by no later than November 17, 2005. However, instead of filing an opposition to the motion, plaintiff served Defendants with an amended complaint (the "Amended Complaint").

Although riddled with additional yet inconsequential factual allegations, the Amended Complaint does not change the gravamen of plaintiff's conclusory allegations -- that Defendants

allegedly prevented the plaintiff from collecting on a default judgment entered in its favor in 2003 in connection with *Jet Star Enterprises, Ltd. v. CS Aviation Services and First Security Bank, N.A.,* 01 Civ. 6590 (the "Jet Star Litigation").  Plaintiff obtained a default judgment against two entities, CS Aviation Services, Inc. ("CS Aviation") and Wells Fargo, solely in its capacity as trustee of trusts that held certain Boeing aircraft on behalf of certain named beneficiaries.  According to plaintiff, certain accounts purportedly owned by CS Aviation illicitly were emptied after the default judgment was entered.  Plaintiff also alleges that it is entitled to the proceeds of another litigation brought by Wells Fargo as a trustee of different trusts.

The Amended Complaint, like the original pleading, cannot be sustained in light of the transaction documents on which the plaintiff clearly still bases its case and in light of publicly-filed security instruments, all of which this Court can and should consider in connection with the Defendants' motion to dismiss.  Most fundamentally, these integral transaction documents show conclusively that the plaintiff's judgment debtors (CS Aviation and Wells Fargo) in fact did ***not*** own the very bank accounts from which, the plaintiff alleges, money was transferred to defeat its judgment.  Different companies owned those accounts and those companies, collectively, owed $147 million -- on a secured basis -- to a syndicate of lenders administered by Deutsche Bank.

In its initial complaint, the plaintiff cited ***to the penny*** the exact amount that the "Acceptance Agreement" states was on deposit in those accounts (and subject to a pre-existing security interest) as of July 25, 2003, the date on which the plaintiff alleges the relevant transfers occurred.  *See* Gould Decl., Ex. A, ¶15.[1]  After reviewing the Defendants' original motion to dismiss, the plaintiff obviously realized that its reference to the exact amount set forth in the

---

[1] Citations to "Gould Decl." are to the Declaration of Lauren C. Gould, sworn to on December 12, 2005; citations to the "Karesh Decl." are to the Declaration of John I. Karesh, sworn to on December 12, 2005.

Acceptance Agreement established beyond doubt its reliance on an agreement that, on its face, demonstrates that the plaintiff's claims are utterly without merit. However, instead of withdrawing its suit, the plaintiff simply replaced the reference to this specific amount with a vague allegation in its Amended Complaint of a transfer of "several million dollars" on July 25, 2003. *See* Cplt., ¶ 17. Plaintiff's wrongful attempt to conceal the true nature of the transactions at issue should not be countenanced. It nonetheless remains clear from the Amended Complaint that plaintiff still bases its suit on the same transfer of roughly $21 million which did not belong to its judgment debtors and therefore, cannot give rise to any claim by plaintiff.[2]

The Complaint also alleges that the transfer of CS Aviation's purported interest in the litigation *Wells Fargo v. TACA International Airlines* (the "TACA Litigation"), prevented plaintiff from receiving payment of the judgment in the Jet Star Litigation. Yet, mortgages on file with the Federal Aviation Administration ("FAA") make plain that Deutsche Bank, as a matter of law, was entitled to receive the TACA Litigation proceeds by virtue of its prior security interest in the TACA aircraft. Moreover, trust agreements also on file with the FAA demonstrate conclusively that CS Aviation did not have any interest in the TACA Litigation proceeds. These agreements show that CS Aviation was not a beneficiary of any of the Wells Fargo trusts that actually owned the aircraft at issue in the TACA Litigation.

The Amended Complaint, like its predecessor pleading, falls well short of pleading a valid cause of action for fraudulent conveyance or any other claim and therefore should be dismissed in its entirety.

---

[2] If, in fact, plaintiff's new reference to "cash assets conveyed" to "certain defendants" does ***not*** refer to the $21,077,460.74 referenced in the original complaint and the Acceptance Agreement, plaintiff should be required to tell this Court immediately what assets, if any, it is referring to in Paragraph 17 of its Amended Complaint. Rule 11 does not permit a plaintiff to sue first and hope to figure out later why it did so.

<u>**STATEMENT OF FACTS**</u>

**CS Aviation**

CS Aviation was a management company that leased out certain aircraft that were beneficially owned by the certain entities, including P-G Newco LLC and S-C Newco LLC (the "Newcos" or "Borrowers") or their subsidiaries and legally owned by Wells Fargo, as Owner-Trustee pursuant to certain trust agreements on file with the FAA ("Trust Agreements"). *See* Gould Decl., Ex. B, § II.1(h); Karesh Decl., Exs. A - H. CS Aviation has no interest in any of the Wells Fargo trusts that owned the planes at issue in either the Jet Star or TACA Litigations discussed below. *See* Karesh Decl., Exs. A - H. Defendants Soros and Chatterjee are alleged to have been the owners of CS Aviation. Cplt., ¶¶ 14, 59.

**The Secured Loan**

Deutsche Bank acted as Administrative Agent for a group of lenders (the "Lenders"), who, pursuant to a credit agreement dated September 24, 1999 (the "Credit Agreement"), lent the Borrowers nearly $210 million (the "Loan") for the purchase of twenty-one Airbus Industrie A300 Aircraft ("Airbus Aircraft"). *See* Gould Decl., Ex. C, § 2.1(A). The Credit Agreement contemplated that the Borrowers would, through Wells Fargo as Owner-Trustee, lease the Airbus Aircraft to third parties. *Id.*

The Credit Agreement provided for multiple forms of security for the Lenders including, among other things, Aircraft Chattel Mortgages on the Airbus Aircraft publicly filed with the FAA. ("Mortgages"). Gould Decl., Ex. C, § 3.1(D). Pursuant to these Mortgages, Deutsche Bank, as Administrative Agent for the Lenders, had a security interest in "all of the Mortgagor's [Wells Fargo's] right, title and interest in any Lease (including . . . the right to receive all amounts of Basic Rent, Supplemental Rent . . .)." Gould Decl., Ex. D, Art. I, § 1.01(e). In addition, under the Credit Agreement the Lenders had collateral agreements that gave the Lenders a perfected security interest in, among other things, the stock of the Newcos and their

subsidiaries and the bank accounts into which lease proceeds were paid.  Gould Decl., Ex. E; Gould Decl., Ex. C at Ex. IX (Lease Cash Collateral Account Agreement).

Bingham acted as counsel for Deutsche Bank in connection with its role as Administrative Agent for the Lenders.  Cplt., ¶ 82.

### The July 25, 2003 Acceptance Agreement

After the Newcos defaulted on their obligations to Deutsche Bank, and because Deutsche Bank held a security interest in the assets of the Newcos, Deutsche Bank accepted collateral in partial satisfaction of the debt pursuant to Uniform Commercial Code ("U.C.C.") §9-620.  Gould Decl., Ex. B, §§ I(3), III.  As set forth in the Acceptance Agreement, the collateral came in the form of the pledged stock in the Newcos, which in turn owned, directly or indirectly, the "Operative Accounts," among other assets.  *See* Gould Decl., Ex. B, §§ I(3), II(f)-(g), (i)-(k), III, Sched. C; Ex. E, § 3.1.  Deutsche Bank placed the interest in the Newcos into the MB Trust.  *See* Gould Decl., Ex. B, § I(3).

Significantly, ***none*** of the Operative Accounts were owned by CS Aviation or by Wells Fargo.  *See e.g., id.* at Sched. C.

### The Jet Star Litigation

On or about July 16, 2001, plaintiff commenced the Jet Star Litigation in this Court against CS Aviation and First Security Bank N.A. (now Wells Fargo) alleging breach of contract in connection with the sale of nine Boeing 737-200 Aircraft ("Boeing Aircraft").  *See generally* Gould Decl., Ex. F.

On July 15, 2003, a default judgment was entered against CS Aviation and Wells Fargo in connection with the Jet Star Litigation (the "Jet Star Judgment").  *Jet Star Enterps., Ltd. v. CS Aviation Servs.*, No. 01 Civ. 6590 (DAB), 2004 WL 350733, *1 (S.D.N.Y. Feb. 25, 2004). (Gould Decl., Ex. G).

**The TACA Litigation**

Judge Gerard E. Lynch of this Court granted a motion for summary judgment in connection with the breach of certain aircraft leases against TACA International Airlines, S.A. in favor of Wells Fargo as Owner-Trustee of the Airbus Aircraft. *See* Karesh Decl., Exs. A - H. On June 4, 2003 Judge Lynch entered a final judgment of approximately $32 million in favor of Wells Fargo as Owner-Trustee. Cplt., ¶ 36; *Wells Fargo Bank Northwest, N.A. v. TACA Int'l Airlines*, 315 F. Supp. 2d 347, 353-54 (S.D.N.Y. 2003). Gould Decl., Ex. H.

Notably, the Airbus Aircraft that secured the Loan (certain of which were at issue in the TACA Litigation) are not the same as the Boeing Aircraft that were the subject of the Jet Star Litigation. *Compare Jet Star Enter., Ltd.*, 2004 WL 350733, *1 (involving "nine Boeing 737-200 aircraft") *with Wells Fargo Bank Northwest, N.A. v. TACA Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 355 (S.D.N.Y. 2002) (involving "three Airbus A300B4-200F aircraft and . . . two additional Airbus A300B4-200F aircraft.") (Gould Decl., Exs. G and I, respectively).

In fact, each Airbus Aircraft was beneficially owned by a separate Borrower with a separate trust relationship with Wells Fargo, pursuant to which Wells Fargo acted solely as Owner-Trustee for the benefit of such Borrower. *See e.g.*, Karesh Decl., Exs. A - H. Thus, the beneficiaries of the trusts involving the Airbus Aircraft were different entities than the beneficiaries of the trusts that owned Boeing Aircraft at issue in the Jet Star Litigation. *See id.*

**Defendant Akin**

The claims against Akin relate merely to its role as designated escrow agent pursuant to the Acceptance Agreement and attached Escrow Agreement. *See* Gould Decl., Ex. B and Ex. 1 thereto. With respect to Akin, the complaint alleges only that $594,337.93 was transferred to its escrow account to make certain payments. Cplt., ¶ 18.

**Defendant Wells Fargo**

As noted above, Wells Fargo acted solely as Owner-Trustee of the Boeing Aircraft at issue in the Jet Star Litigation and the Airbus Aircraft at issue in the TACA Litigation. The use of trusts in aviation finance transactions is quite common and serves several purposes. Each of the Trust Agreements involved in the Jet Star Litigation, for example, recites at the very outset (page 1) that: "Trustor desires to create a trust (the "Trust") in order to ensure the eligibility of the Aircraft for United States registration with the FAA." *See e.g.,* Karesh Decl., Exs. A - H.

Likewise, each of the Trust Agreements involved in the TACA Litigation recites that the trusts are created "in order to acquire title to each of the Aircraft." *See* Karesh Decl., Exs A - H. U.S. registration can be accomplished by establishing a grantor trust to hold legal title on behalf of the trustor/beneficiaries. *See e.g.,* Shrank and Gough, *Equipment Leasing – Leveraged Leasing*, 4th Ed. 1999, Rev. 2005, at § 17:4.2 (A), (*Registration of Aircraft by non-U.S. Citizens, (A) Owner Trust*); *see also* 49 U.S.C. § 40102(a)(15).

**Defendant Sidley**

In the Amended Complaint, Sidley is alleged to have been litigation counsel for CS Aviation and Wells Fargo in both the Jet Star and TACA litigations. Cplt., ¶¶ 15, 33. Sidley was granted leave to withdraw in the Jet Star Litigation, and withdrew as counsel before the default judgment was entered. *Id.*, ¶¶ 15, 36. Sidley is alleged only to have aided and abetted Wells Fargo's purported breach of fiduciary duty to Jet Star. *Id.*, ¶¶ 51-53. That breach allegedly stems from Wells Fargo's execution of a Satisfaction of Judgment in the TACA Litigation once the judgment had been paid to Deutsche Bank, as allegedly directed by CS Aviation, the alleged beneficiary of the trusts for which Wells Fargo acted as trustee. *Id.*, ¶¶ 37, 48-49. Plaintiff does not allege that Sidley played any role in the alleged transfer of any property out of CS Aviation.

<u>**ARGUMENT**</u>

**I.**    **THE DOCUMENTS AND PUBLIC FILINGS UNDERLYING THE TRANSACTIONS AT ISSUE ARE COGNIZABLE ON A MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

The Amended Complaint is predicated upon certain transactions that are alleged to have taken place on July 25, 2003.  *See* Cplt., ¶ 17.  Where a pleading refers to a transaction, or relies on its underlying transaction documents, those documents can be considered by the Court on a 12(b)(6) motion.  *Chira v. Columbia Univ.*, 289 F. Supp. 2d 477, 482 (S.D.N.Y. 2003), *citing Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  Although Plaintiff would like to conceal from this Court the fact that the Acceptance Agreement forms the basis of its pleading, the gravamen of the Amended Complaint is an alleged fraudulent transfer that took place on July 25, 2003, the very date of the Acceptance Agreement.  The Amended Complaint also makes specific reference to $594,337.93 being transferred to an Akin Trust Account.  Cplt., ¶ 18.  To the penny, this reference comes from § III.2 (p. 6) of the Acceptance Agreement.  The Acceptance Agreement may properly be considered by this Court in deciding the instant motion as it is relied on by and is integral to the Amended Complaint.  *Chambers*, 282 F.3d at 152-53.

The Court also may properly consider the Acceptance Agreement (and its attachments), as it was provided to plaintiff's counsel before the original complaint was filed, pursuant to a subpoena served upon Bingham in post-judgment discovery taken by Jet Star in its prior litigation.  *See* Gould Decl., ¶ 2.  *See e.g., Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (district court properly considered documents neither attached to the complaint, nor incorporated by reference, where the documents at issue were those that plaintiff "had either in its possession or had knowledge of and upon which it relied in bringing suit"); *Chambers*, *supra* at 153.

Furthermore, the Credit Agreement and the Pledge Agreement, (Gould Decl., Exs. C and E respectively), are explicitly incorporated by the Acceptance Agreement and therefore may

properly be considered by this Court. *See Williams v. Deutsche Bank Sec., Inc.*, No. 04 Civ. 7588 (GEL), 2005 WL 1414435, *3 (S.D.N.Y. Jun. 13, 2005) (holding that where an agreement was referenced in the complaint, contractual documents could be considered "along with the other documents [the contract] incorporates by reference."). Moreover, plaintiff also had these documents in its possession when drafting the Amended Complaint as they were submitted with Defendants' motion to dismiss the original complaint.

It is also well-settled law that a court may take judicial notice of documents that have been publicly filed. *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003). Defendants have attached true and correct copies of the Mortgages pertaining to the aircraft involved in the TACA Litigation, which have been publicly filed with the FAA. *See* Gould Decl., Ex. D. Because the Mortgages are matters of public record, the Court may take judicial notice of them.[3] *Kavowras*, 328 F.3d at 57. Similarly, the Trust Agreements relevant to the transactions and litigations at issue -- and which necessarily underlie plaintiff's claim against Wells Fargo for breach of fiduciary duty -- are integral to the complaint and also on file with the FAA, and thus may be considered by the Court. *Id.*; *see also*, *Burgos v. Airday*, No. 00 Civ 4288 (VM), 2001 WL 995342, *4-5 (S.D.N.Y. Aug. 29, 2001).

Although generally on a motion to dismiss the Court must accept the allegations in the complaint as true, the Court is not required to accept the truth of allegations that are directly contradicted by documents relied upon by plaintiff or referred to explicitly or implicitly in the complaint. *Sobek v. Quattrochi*, No. 03 Civ. 10219 (RWS), 2004 WL 2809989, *2 (S.D.N.Y. Dec. 8, 2004). Here, such documents conclusively disprove the central allegation of the

---

[3] Plaintiff has already conceded that the Court may consider these Mortgages in its memorandum of law in support of its Cross-Motion to convert Defendants' motion to one for summary judgment. *See* Cross-Motion, p. 4 n.1.

Amended Complaint that certain asset transfers were improper. Among other things, these documents demonstrate that Jet Star plainly had and has no right whatsoever to the funds at issue.

## II. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE VIABLE CLAIMS FOR RELIEF PURSUANT TO RULE 12(B)(6)

The Amended Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state viable claims against any of the Defendants upon which relief may be granted.

### A. The First And Second Causes Of Action Fail To State Claims For Fraudulent Conveyance Against Soros, Chatterjee, Deutsche Bank, Wells Fargo, MB Trust, And Akin.

In the First and Second Causes of Action, plaintiff alleges that a transfer of CS Aviation's cash assets to Deutsche Bank and MB Trust, which allegedly occurred on July 25, 2003, constitutes a fraudulent conveyance. Specifically, plaintiff contends that Defendants violated section 276 of New York's Uniform Fraudulent Conveyance Act ("UFCA") by allegedly transferring on July 25, 2003, CS Aviation cash deposits in various bank accounts with actual intent to defraud plaintiff. Cplt., ¶¶ 17, 21-25. Plaintiff also alleges that Defendants violated section 273 of the UFCA by allegedly making the cash transfer when CS Aviation was insolvent and without fair consideration. Cplt., ¶ 27.

In order to plead adequately a claim under section 276 of the UFCA, plaintiff must allege "actual intent to hinder, delay, or defraud" creditors on the part of the transferor. N.Y. Debt. & Cred. Law § 276 (2005); *see In re Sharp* 403 F.3d 43, 56-57 (2d Cir. 2005). The allegations must meet the stringent requirements of Rule 9(b) and therefore, a mere conclusory allegation is not sufficient to establish a cause of action for intentional fraudulent transfer. *Oppenheimer-Palmieri Fund, L.P. v. Peat Marwick Main & Co.,* 802 F. Supp. 804, 816 (E.D.N.Y. 1992).

In order to plead adequately a claim for a fraudulent conveyance under section 273 of the UFCA, plaintiff must allege that the conveyance was "made . . . by a person who is or will be thereby rendered insolvent" and that the conveyance "is made . . . without a fair consideration."

N.Y. Debt. & Cred. Law § 273. Plaintiff's allegations are insufficient to satisfy these pleading requirements.

1. **Plaintiff Does Not, And Cannot Allege That It Is A Creditor Of The Entities That Owned And Conveyed The Cash Assets That Were Allegedly Transferred on July 25, 2003.**

New York's UFCA requires that the party asserting a claim of fraudulent conveyance be a creditor of the transferor. *See* N.Y. Debt. & Cred. Law §§ 273-276, 278-279; *see Lippe v. Bairnco Corp.*, 225 B.R. 846, 857 (S.D.N.Y. 1998). Here, the Acceptance Agreement plainly shows that plaintiff is not a creditor of the entities owning the bank accounts from which funds were allegedly transferred to Deutsche Bank or MB Trust on July 25, 2003. *See* Gould Decl., Ex. B, Sched. C. Specifically, the Acceptance Agreement shows that all of the cash assets at issue were maintained in certain bank accounts, defined as "Operative Accounts," and that all of the funds in those accounts were owned by "Obligors," defined as the "Borrowers, Parent Guarantors, Pledgors, and other Subsidiary Guarantors," but not CS Aviation. Gould Decl., Ex. B, §§ I(2), III (2), II(1)(f)-(g), and Sched. C.

Because plaintiff alleges that it held a judgment only against CS Aviation and Wells Fargo, as trustee (Cplt., ¶ 16), and not against the Borrowers or Obligors that owned the accounts from which funds were allegedly transferred, plaintiff's First and Second Causes of Action should be dismissed.

2. **The Alleged July 25, 2003 Transfer Of Cash Assets To Secured Lenders Is Not Actionable As a Fraudulent Conveyance.**

Even if plaintiff could be deemed a creditor of the entities that owned and allegedly transferred the cash assets on July 25, 2003, plaintiff still fails to state a fraudulent conveyance claim. Plaintiff's new allegations regarding the "badges of fraud" relating to the alleged July 25 transfer cannot obscure the basic fact that the funds in question were allegedly transferred to

Deutsche Bank and MB Trust pursuant to a valid security interest and in a manner consistent with U.C.C. Article 9. Article 9-620 of the U.C.C. provides, *inter alia*, that "a secured party may accept collateral in full or partial satisfaction of the obligation it secures . . ." where the "debtor consents to the acceptance" of the collateral in partial satisfaction of the obligation. N.Y. U.C.C. § 9-620(a)(1), (c) (2001). Indeed the Acceptance Agreement expressly states that it was entered into pursuant to U.C.C. Article 9-620 in partial satisfaction of the secured obligation owed by the Borrowers to the Lenders. *See* Gould Decl., Ex. B, §§ I(3); III(1).

A secured creditor has priority over an unsecured interest in the same property or a creditor without any such interest. N.Y. U.C.C. § 9-201; *Shanghai Changhong Int'l Trading Co., Ltd. v. K&D Logistics Co., Ltd.*, No. 99 CV. 4992IJG, 2002 WL 1732807, *3 (E.D.N.Y. July 19, 2002). Moreover, "a conveyance which satisfies an antecedent debt . . . is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another" and even if the conveyance renders the debtor insolvent. *See Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 599 N.Y.S.2d 816, 819 (1st Dep't 1993), *cited with approval in MacDraw, Inc. v. The CIT Group Equip. Fin., Inc.*, 157 F.3d 956, 964 (2d Cir. 1998).

Because the Lenders accepted the assets in partial satisfaction of a debt by virtue of their security interest in those assets, plaintiff's First and Second Causes of Action should be dismissed.

### 3. Defendants Soros And Chatterjee Are Not Liable For The Alleged Fraudulent Transfer Of The Cash Assets Because Those Assets Were Not Transferred To Them.

Even if the July 25, 2003 Acceptance Agreement is ignored, and the Court assumes, for purposes of this motion, that some or all of the cash assets allegedly transferred on July 25, 2003 was CS Aviation property, plaintiff still fails to plead a fraudulent conveyance claim against Defendants Soros or Chatterjee in respect of those assets.

Under New York law, the usual relief to which a creditor who demonstrates a fraudulent conveyance is entitled, is a judgment setting aside the fraudulent conveyance so it can enforce its underlying judgment against the transferred property. "'The creditor's remedy . . . is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance,' and requiring that it be restored to the debtor's possession." In some limited circumstances that are not relevant here, such a creditor also may be entitled to recover damages from the transferee. *Geren v. Quantum Chem. Corp.,* 832 F. Supp. 728, 736-37 (S.D.N.Y. 1993); *see also Hassett v. Goetzmann*, 10 F. Supp. 2d 181, 191-92 (N.D.N.Y. 1998); *Fed. Deposit Ins. Corp. v. Porco*, 552 N.Y.S.2d 910, 911 (1992). Plaintiff has failed to allege sufficient facts to establish either of those circumstances here with respect to Defendants Soros or Chatterjee.

Here, plaintiff does not and cannot allege that Soros or Chatterjee were transferees of the cash assets that were allegedly transferred on July 25, 2003. Plaintiff does allege that Soros and Chatterjee received consideration from the Lenders that received the assets (Cplt., ¶ 22), but plaintiff does not state what that consideration was and the Acceptance Agreement does not identify any such consideration.[4] Therefore, for this additional reason, plaintiff's First and Second Causes of Action must be dismissed as against Defendants Soros and Chatterjee.[5]

---

[4] Plaintiff also alleges that Soros and Chatterjee caused CS Aviation to transfer the cash assets, but even if that allegation is true, it cannot support a claim for damages against Soros and Chatterjee because the only remedy available to plaintiff would be a return of the cash assets to CS Aviation. Plaintiff, as a creditor allegedly injured by a fraudulent conveyance, does not have an independent remedy of money damages against third parties that assisted the debtor in making the transfer. *Porco*, 552 N.Y.S.2d at 911; *Hassett,* 10 F. Supp. 2d at 191-92.

[5] Although Bingham is not mentioned in the body of the Amended Complaint as a Defendant on the First or Second Cause of Action, the "wherefore" clause of the pleading seeks damages against it (and others) on these causes of action. While we assume this to be a typographical error on plaintiff's part, the claims against Bingham fail in any event. It is not alleged that Bingham received any money or property as a result of the alleged fraudulent transfer. It is well established that a "party who is not the transferor,

(footnote continued on next page)

**B.**     **The Fourth, Fifth And Ninth Causes Of Action Fail To State Claims For Intentional And Constructive Fraudulent Conveyance As Against Soros, Chatterjee, Deutsche Bank And Wells Fargo Because The TACA Litigation Proceeds Were Conveyed To A Secured Creditor Pursuant To Mortgages Filed With the FAA.**

The Fourth, Fifth and Ninth Causes of Action pertain to allegations of fraudulent transfer relating to Deutsche Bank's receipt of the proceeds from the TACA Litigation. Cplt., ¶¶ 37, 42, 55. However, the TACA proceeds were properly conveyed to Deutsche Bank as a secured creditor having a perfected first-priority security interest in the aircraft at issue in the TACA Litigation.[6] *See* Gould Decl., Ex. D.

The Mortgages provided, *inter alia*, that:

> Section 1.01   <u>Granting of Security Interest</u>. The Mortgagor does hereby transfer, convey, mortgage, hypothecate, assign and grant a security interest to the Mortgagee [Deutsche Bank][1] in the following collateral . . . :
> (e)      all of the Mortgagor's right, title and interest in any Lease (including, without limitation) the right to receive all amounts of **Basic Rent**, **Supplemental Rent**, . . . all other rights and property included therein together with all payments, including, without limitation, all **rent**, **damages**, . . . and other amounts due to the Mortgagor . . . thereunder .

Gould Decl., Ex.D Art. I, § 1.01 (emphasis added).

---

transferee, or beneficiary of the allegedly fraudulent conveyance cannot be held liable for the conveyance under [the New York Debtor and Creditor Law]. There is no cause of action under New York law for 'mere participation' in an allegedly fraudulent conveyance." *Lippe,* 225 B.R. at 857; *see also Porco*, 552 N.Y.S.2d at 911 (holding that creditor could not seek remedy for money damages against defendants who were "neither transferees of the assets nor beneficiaries of the conveyance"). Moreover, New York's UFCA does not provide a remedy for damages against attorneys participating in the transfer of assets where the attorney defendants are neither transferees nor beneficiaries of the transfer. *Gallant v. Kanterman*, 603 N.Y.S.2d 315, 318 (1st Dep't 1993). Plaintiff does not and cannot allege that Bingham was a beneficiary of any transfer, and therefore and claim against it for fraudulent conveyance necessarily fails.

[6] As the Acceptance Agreement demonstrates, the Newcos defaulted on their obligations to the Lenders, thereby triggering Deutsche Bank's right to exercise its security interest. *See* Gould Decl., Ex.B, § I(2).

The foregoing is entirely cognizable on this motion.  The manufacturer's serial numbers ("MSN") referenced on the first page of the Mortgages (Gould Decl., Ex. D) (Mortgages on aircraft with MSNs 106, 107, 139, 140) correspond precisely to the MSNs of the planes at issue in the published TACA decision, 315 F. Supp. 2d at 352 ("Wells Fargo calculates that the unpaid rent, through the time of its demand for liquidated damages, is as follows: … for four of the aircraft - *Manufacturer's Serial Numbers ("MSN") 106, 107, 139, and 140* . . ." (emphasis added)).  Gould Decl., Ex. H.

The decision in the TACA Litigation makes plain that the case was a suit to recover "rent due under the Leases."  *Wells Fargo*, 315 F. Supp. 2d at 349 (Gould Decl., Ex. H).  Therefore, there is no question that Deutsche Bank had a security interest in the proceeds of the TACA Litigation.  As shown above in Section II(A)(2), a security interest in property will have priority over an unsecured interest in the same property or over a creditor without any such interest, like Jet Star.  *See* N.Y. U.C.C. §9-201; *Shanghai*, 2002 WL 1732807, at *3.  As a matter of law, because the Mortgages granted Deutsche Bank a security interest in the proceeds of leases of the aircraft, and because the TACA Litigation was a suit to recover such proceeds, Deutsche Bank had every right, to the exclusion of a (supposed)[7] unsecured creditor, to exercise its security

---

[7] Because, as the Mortgages demonstrate, Wells Fargo, as Owner-Trustee, was the mortgagor of all interests in the TACA planes and Deutsche Bank, as mortgagee, had a legal right to the proceeds of the TACA Litigation, regardless of identity of the beneficiary of the trusts that owned the planes leased to TACA.  In any event, as further shown in Section II(D)(1), *infra*, the pertinent Trust Agreements on file with the FAA show that CS Aviation was not, in fact, the beneficiary of the trusts that owned the planes at issue in the TACA Litigation.  Karesh Decl., Exs. A - H.  Accordingly, CS Aviation had no "interest" whatsoever in the TACA proceeds.  Indeed, CS Aviation was not a plaintiff in the TACA Litigation; it was merely a third-party defendant, who was dismissed from the case. *See Wells Fargo*, 247 F. Supp. 2d at 372 (Gould Decl., Ex. I).  Thus, no "interest" or asset belonging to CS Aviation was transferred when Deutsche Bank exercised its security interest in the TACA proceeds.  For this reason as well, the Fourth, Fifth and Ninth Causes of Action fail as a matter of law.

interests in the proceeds of the TACA Litigation. *See MacDraw, Inc.*, 157 F.3d at 964. Accordingly, the Fourth, Fifth and Ninth Causes of Action should be dismissed.

1. **Defendants Soros And Chatterjee Are Not Liable For The Alleged Fraudulent Transfer Of The TACA Claims Because Those Assets Were Not Transferred To Them**

Plaintiff does not and cannot allege that Soros and Chatterjee were transferees of any of the proceeds of the TACA Litigation. Therefore, as demonstrated in Section II(A)(3), *supra*, there can be no claim against them for fraudulent transfer of those assets. *See Hassett*, 10 F. Supp. 2d at 191-92; *Geren,* 832 F. Supp. at 736-37; *Porco*, 552 N.Y.S.2d at 911.

Plaintiff does allege that Soros and Chatterjee caused CS Aviation to transfer the right to control and to retain the TACA Litigation proceeds. Even if that allegation is true, however, it cannot support a claim for damages against Soros and Chatterjee because the only remedy available to plaintiff would be to turn over to CS Aviation, not the plaintiff, any such proceeds. *See id.* For these reasons and the reasons set forth in Section II(A)(3), *supra*, plaintiff's Fourth and Fifth Causes of Action must be dismissed as against Defendants Soros and Chatterjee.

C. **The Third, Sixth, Fourteenth, Seventeenth And Eighteenth Causes Of Action For Unjust Enrichment Should Be Dismissed.**

The Third, Sixth, Fourteenth, Seventeenth and Eighteenth Causes of Action purport to set forth claims for Unjust Enrichment. The Third Cause of Action, against all Defendants except Sidley, Chatterjee and Bingham, is based on the alleged transfer of funds on July 25, 2003. Cplt., ¶ 30. The Sixth Cause of Action, against Deutsche Bank, is based on the transfer of CS Aviations' alleged interest in the proceeds of the TACA Litigation. Cplt., ¶ 45. The Seventeenth and Eighteenth Causes of Action allege that Bingham and Akin, respectively, were unjustly enriched at the expense of plaintiff when they received unspecified "payments" in connection with their representation of Defendants Deutsche Bank and Soros, respectively. *Id.* ¶¶ 83, 86. The Fourteenth Cause of Action alleges that Defendants Soros and Chatterjee were unjustly

enriched when CS Aviation "dividended up" to Soros and Chatterjee CS Aviation's revenues, including plaintiff's payments to CS Aviation.  *Id.* ¶ 70.  Each of these claims is legally deficient.

Unjust enrichment is a quasi-contractual claim which requires a plaintiff to allege that: (1) the defendant was enriched; (2) enrichment was at the plaintiff's expense; and (3) the circumstances were such that equity and good conscience requires defendants to make restitution. *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 334, n. 23 (S.D.N.Y. 2003) (dismissing unjust enrichment claim on 12(b)(6) motion because of plaintiff's failure to allege a quasi-contractual relationship).

Here, plaintiff has not alleged that it had a contractual or quasi-contractual relationship with any of the Defendants.  Indeed, here, as in *Reading*, there is no allegation that the plaintiff had **any** "prior course of business dealings with defendants whatsoever."  *See id.* (an unjust enrichment claim requires an allegation that the defendant and the plaintiff had some type of direct dealing or an actual, substantive relationship).  For these reasons, all of plaintiff's claims for unjust enrichment fail.

In addition, the unjust enrichment claims are deficient for the following reasons:

### 1.  Third Cause of Action (the July 25, 2003 Transaction).

As detailed above in Section II(A) the July 25, 2003 transaction was undertaken pursuant to the U.C.C. Article 9 rights of secured creditors.  As a matter of law, a secured creditor cannot be unjustly enriched by taking its own collateral in partial satisfaction of its debt pursuant to U.C.C. § 9-620.  *See MacDraw,* 157 F.3d at 963-64.

### 2.  Sixth Cause of Action (the TACA Proceeds).

The Sixth Cause of Action against Deutsche Bank also fails because, as shown above, Deutsche Bank, as Administrative Agent, had every right, by virtue of the Mortgages, to the proceeds of the TACA Litigation to the exclusion of any unsecured creditor as a matter of law. *See* Section II(B), *supra*.  An unsecured creditor cannot state a claim for unjust enrichment with

respect to a secured creditor's exercise of its security interest.  *See MacDraw,* 157 F.3d at 963-64.

Indeed, CS Aviation had no "interest" in the TACA proceeds.  Wells Fargo, acting as Owner-Trustee on a number of trusts, owned different planes for each different trust, for the benefit of different trustors.  *See* Karesh Decl., Exs. A-H.  These Trust Agreements plainly show that the beneficiaries of all those trusts owning the aircraft at issue in the TACA and Jet Star Litigations were entities ***other than CS Aviation***.  Accordingly, Deutsche Bank was not enriched at plaintiff's expense by virtue of its receipt of the TACA Litigation proceeds.

### 3.    The Fourteenth Cause Of Action For Unjust Enrichment Against Soros And Chatterjee Fails As A Matter of Law.

The Fourteenth Cause of Action, regarding CS Aviation's alleged "dividending up" CS Aviation's revenues to Soros and Chatterjee (Cplt. ¶ 70), fails to state a claim for unjust enrichment.  Plaintiff does not allege that Soros or Chatterjee obtained any benefit from CS Aviation dividends or that such dividends were at plaintiff's expense and it does not allege any facts from which it might be concluded that equity and good conscience require restitution of any monies to plaintiff.

Plaintiff fails to plead sufficiently that Soros and Chatterjee received any benefit at plaintiff's expense from the "dividending up" of CS Aviation revenue.[8]  Plaintiff alleges that unspecified amounts were "dividended up" to Soros and Chatterjee.  But, plaintiff also pleads that Soros and Chatterjee made capital contributions by which they allegedly returned funds to

---

[8] Plaintiff apparently has dropped its allegation in the original complaint that Soros and Chatterjee were unjustly enriched as a result of the assets transferred as part of the July 25, 2003 transaction to creditors who had secured interest in such assets.  Such transfer cannot be the basis for an unjust enrichment claim. *See MacDraw*, 157 F.3d at 963-64 (creditor does not sustain detriment supporting unjust enrichment claim where debtor assigned assets to another creditor as security for an antecedent debt).

CS Aviation. Cplt., ¶¶ 61-62. Because plaintiff does not allege the amounts of either the "dividends" or capital contributions, the amended complaint fails to allege that a net amount was "dividended up" to Soros or Chatterjee. The amended complaint does not even allege that amounts were "dividended up" to Soros and Chatterjee after the capital contributions were made. The Amended Complaint therefore fails to allege that Soros and Chatterjee obtained any benefit from the alleged dividends or that such dividends were at plaintiff's expense.

Further, given the allegations of the Amended Complaint and the facts properly presented to the Court on this motion to dismiss, the Amended Complaint does not plead facts sufficient to allege a viable claim that equity and good conscience require Soros and Chatterjee, or CS Aviation, to make any restitution to plaintiff.

### 4.    The Seventeenth Causes Of Action Fails To State A Claim For Unjust Enrichment Against Bingham

As stated above, it is not alleged that Bingham had any relationship, business or otherwise, with plaintiff Jet Star whatsoever, and therefore a claim for unjust enrichment cannot lie. *See Reading*, 317 F. Supp. 2d at 334. For this reason, the Fourteenth Cause of Action should be dismissed.

Furthermore, the Amended Complaint alleges that "Defendant Bingham represented defendant Deutsche Bank with respect to all matters set forth in th[e] complaint," that "Bingham, aided by Soros counsel Akin, advised, masterminded, documented and effectuated the fraudulent transfers complained of in Causes of Action 1, 2, 4 and 5" and that "Bingham … instigated, induced and effectuated Wells Fargo's wrongful transfer of the TACA Litigation proceeds to Bingham client Deutsche Bank." Cplt., ¶ 82. However, as demonstrated above in Section II(A), the TACA Litigation proceeds were transferred to Bingham's client, Deutsche Bank, pursuant to a valid exercise of a security interest in the proceeds as evidenced by the Mortgages. Similarly, the July 25, 2003 Acceptance Agreement explicitly provided that the stock of the Newcos was

conveyed in partial satisfaction of a UCC Article 9 secured debt.

Plaintiff's unjust enrichment claim against Bingham appears to stem from the fact that Bingham received payment for legal services from Deutsche Bank in connection with its representation of Deutsche Bank in the transaction memorialized by the Acceptance Agreement. *See* Cplt., ¶ 83. However, a claim for unjust enrichment requires that the Defendant be enriched ***at the plaintiff's expense***. Bingham's receipt of legal fees from its client -- a party not alleged to be plaintiff's judgment debtor -- cannot constitute unjust enrichment at plaintiff's expense. *See Martes v. USLIFE Corp.*, 927 F. Supp. 146, 148-49 (S.D.N.Y. 1996) (dismissing judgment creditor's claim for unjust enrichment against a corporation seeking to recover funds received by that corporation from a third-party, not plaintiff's judgment debtor).

**5.     The Third And Eighteenth Causes Of Action Fail To State A Claim Against Akin For Unjust Enrichment.**

Because plaintiff does not allege any contractual or quasi-contractual relationship with Akin, nor any prior course of dealing whatsoever, the Eighteenth Cause of Action fails to state a claim against Akin and should be dismissed. *See Reading,* 317 F. Supp. 2d at 334. Additionally, as paragraph 18 of plaintiff's Amended Complaint alleges, and as the Acceptance and Escrow Agreements confirm, $594,337.93 was allegedly transferred to Akin to hold in escrow to make payments to CS Aviation officers and employees and others. Cplt., ¶ 18. Plaintiff fails to explain how Akin can be liable for unjust enrichment in its role as escrow agent. Nor does it explain how severance payments made to CS Aviation employees and the other payments referenced in the Escrow Agreement were improper.

**D.     The Seventh And Tenth Causes Of Action Fail To State Claims For Breach Of Fiduciary Duty Or For Negligence Against Wells Fargo.**

In its Seventh and Tenth Causes of Action, plaintiff alleges Wells Fargo breached a purported "fiduciary duty" and a purported "duty of care" "to plaintiff Jet Star . . . to retain

sufficient funds from the TACA Litigation judgment to satisfy the [Jet Star Litigation] judgment in favor of plaintiff Jet Star" by causing the entire proceeds of the TACA Litigation "to be paid over to defendant Deutsche Bank," "without retaining a sufficient sum to satisfy plaintiff Jet Star's judgment [in the Jet Star Litigation]." Cplt., ¶¶ 49, 57. The only act that Wells Fargo is alleged to have taken to so "cause and/or allow" such payment, is to execute a Satisfaction of Judgment in the TACA Litigation once said judgment had, in fact been paid to Deutsche Bank with the alleged consent and participation of CS Aviation, the purported trust beneficiary. Cplt., ¶¶ 37, 48-49. The Seventh and Tenth Causes of Action are both legally flawed and should be dismissed.

**1.    Wells Fargo Had No Duty (Nor Any Right) to Pay Any Proceeds of the TACA Litigation to Jet Star Since Those Proceeds Belonged to the Beneficiaries of Separate Trusts.**

As explained above, the trusts involved in the Jet Star Litigation and the TACA Litigation are separate, and the trustor/beneficiaries of each trust are different.[9]    Jet Star's

---

[9] In a further attempt to mislead this Court as to the beneficiaries of the Boeing and Airbus trusts, plaintiff states at paragraph 47 of its Amended Complaint that Wells Fargo's actions as trustee were on behalf of "trust beneficiary CS Aviation," without even informing the Court that every one of the trust agreements involved in this litigation (all eight trusts) specifically name as trustor-beneficiary, eight separate corporations, **none of which is CS Aviation**. Thus, the three trusts involved in the Jet Star Litigation each related to Boeing aircraft owned on behalf of the following trustor/beneficiaries:

|    | Trustor/Beneficiary | Date of Trust Agreement | Exhibit to Karesh Decl. |
|----|---------------------|-------------------------|-------------------------|
| 1. | S-C Domestic Holdings VI LLC | (12/20/96) | A |
| 2. | S-C Domestic Holdings VII LLC | (12/20/96) | B |
| 3. | S-C Domestic Holdings VIII LLC | (12/20/96) | C |

whereas the five trusts involved in the TACA Litigation each related to Airbus aircraft owned on behalf of the following trustor/beneficiaries:

|    | Trustor/Beneficiary | Date of Trust Agreement | Exhibit to Karesh Decl. |
|----|---------------------|-------------------------|-------------------------|
| 4. | S-C Domestic Holdings XIII LLC | (11/1/97) | D |
| 5. | S-C Domestic Holdings XIV LLC | (11/1/97) | E |
| 6. | S-C Domestic Holdings XV LLC | (2/1/98) | F |
| 7. | S-C Domestic Holdings XVI LLC | (4/1/98) | G |
| 8. | S-C Domestic Holdings XIX LLC | (7/1/98) | H |

(footnote continued on next page)

Seventh and Tenth Causes of Action, therefore, are essentially based on the false premise that Wells Fargo, as trustee of the Airbus Aircraft trusts in which Jet Star had no interest, had some "duty" to take the TACA Litigation proceeds and pay them over to plaintiff as a creditor of the Boeing Aircraft trusts which were maintained for the benefit of wholly different trustor/beneficiaries. In essence, Jet Star claims that Wells Fargo was duty bound to "rob Peter to pay Paul." However, Wells Fargo acting as trustee, had no such duty as a matter of law. On the contrary, it was duty bound *not* to take assets from one set of trusts to pay a creditor of a different trust,[10] even assuming that Wells Fargo was in possession of funds in either trust, which it was not. *See*, *e.g.*, *Estates of Florence H. Davis and Benjamin B. Davis*, 284 N.Y.S.2d 414, 425 (N.Y. Surr. Ct. 1967) (holding that funds from a testamentary trust under the will of a deceased wife could not be used to meet obligations of a testamentary trust under the will of the deceased husband); Restatement (Second) of Trusts § 179 (Trustee under duty to keep trust property separate from other property and to see to it that trust property designated as such).

### 2. Even If CS Aviation Were Actually a Beneficiary of One or More of the Aircraft Trusts, Wells Fargo Would Still Owe No Fiduciary Duty to Jet Star.

Plaintiff appears to argue that Wells Fargo owed a fiduciary duty not only to the beneficiaries of the trusts for which it served as trustee -- here alleged to be CS Aviation (Cplt., ¶ 47) -- but also to Jet Star as a judgment creditor of CS Aviation. Cplt., ¶¶ 47-50. This far-fetched theory is supported by neither the trust agreements, nor by applicable law.

---

*See* Karesh Decl., Exs. A-H.

[10] Obviously, Wells Fargo's duties as trustee of the trusts involved in the Jet Star Litigation cannot require it to violate the duties it owes as trustee of the trusts involved in the TACA Litigation. As cited above, Judge Batts has already held that Wells Fargo acted "solely as owner-trustee" with respect to the Boeing Aircraft involved in the Jet Star Litigation, and Judge Lynch has likewise held in the TACA Litigation that Wells Fargo was "acting solely as owner-trustee under the [Airbus] lease agreements." *Wells Fargo Bank Northwest*, 247 F. Supp. 2d at 355 (Gould Decl., Ex. I).

The duties of a commercial trustee, such as Wells Fargo, are defined by the terms of the governing trust instrument and fiduciary obligations to the trust beneficiaries imposed by common law. *Lawrence v. Cohn*, 932 F. Supp. 564, 572 (S.D.N.Y. 1996); *In re IBJ Schroder Bank & Trust Co.*, 706 N.Y.S.2d 114, 115 (1st Dep't 2000). In the TACA Litigation, Wells Fargo brought suit in its capacity as trustee, to recover for unpaid lease payments for the five Airbus Aircraft leased to TACA Airlines or its subsidiary. Each aircraft was the subject of a separate trust agreement, and was owned by Wells Fargo as trustee for the benefit of separate entities (none of which is CS Aviation).[11] *See* Karesh Decl., Exs. A-H. There is nothing within the four corners of the Trust Agreements that imposes a duty upon Wells Fargo, as trustee, running to CS Aviation, to CS Aviation's creditors, or to creditors of those entities that are actually identified as the trustor/beneficiaries.

Furthermore, even if plaintiff's allegations were correct, and CS Aviation were the ultimate beneficiary of the relevant trusts, Wells Fargo still would owe no fiduciary duty to Jet Star based on its status as a judgment creditor of CS Aviation. *State of Colorado v. First Interstate Bank of Denver*, 743 P.2d 449, 452 (Colo. Ct. App. 1987) (trustee has no duty to judgment creditor of beneficiary unless creditor has a lien or an established interest in the judgment debtor's interest in the relevant trust by virtue of a court proceeding). Likewise, plaintiff has no right to object to the disposition of the TACA Litigation proceeds simply because it obtained a judgment against a party it claims to be the "ultimate beneficiary" of the trusts awarded the proceeds. Courts have routinely acknowledged that judgment creditors have no interest in the assets of a trust simply by virtue of their status as creditors of a trust beneficiary.

---

[11] Plaintiff's reliance on dicta in Judge Lynch's decision in *Wells Fargo Bank v. TACA Int'l Airlines*, to suggest that CS Aviation was "the ultimate beneficiary of the trusts" at issue in the TACA Litigation is misplaced, and flatly contradicted by the express terms of the trust agreements. *See* Karesh Decl., Exs. D-

(footnote continued on next page)

*Nat'l Ins. & Guar. Corp. Ltd. v. Vander Veer*, 322 N.Y.S. 2d 293, 302 (N.Y. Sup. Ct. 1971) (assets held in trust cannot be reached by judgment creditor of beneficiary).[12]

3.       **Wells Fargo's Acting at the Direction of the Party Alleged to Be its Trust Beneficiary Cannot Give Rise to a Claim for Breach of Fiduciary Duty**

Assuming, *arguendo*, the validity of plaintiff's allegation that CS Aviation is the beneficiary of the trusts for which Wells Fargo acted as trustee, the allegations in the Amended Complaint cannot sustain a viable claim for breach of fiduciary duty against Wells Fargo.

Wells Fargo is alleged to have breached its fiduciary duty by "causing and/or allowing" the TACA Litigation proceeds to be paid to Deutsche Bank by executing a Satisfaction of Judgment after the proceeds were paid.  Cplt., ¶¶ 48-49.  Significantly, however, plaintiff also has alleged that the TACA Litigation proceeds were paid to Deutsche Bank as a result of an assignment by CS Aviation.  *Id.*, ¶ 37.  Thus, if Wells Fargo had any involvement in seeing that Deutsche Bank received the proceeds, it was acting at the direction of its alleged trust beneficiary and *consistent* with its fiduciary obligation, rather than in violation of its duties.  In fact, Wells Fargo was bound by the terms of the Trust Agreements to follow the trustor/beneficiary's directions regarding the disposition of the TACA Litigation Proceeds.  *See* Karesh Decl. Exs. D-H, §§ 5.01, 9.04.  A trustee's actions that are consistent with its rights and obligations as defined by the trust documents cannot constitute a breach of the trustee's fiduciary duties.  *In re Trusts A&B*, 672 N.W.2d 912, 917 (Minn. Ct. App. 2004).

_____

H; *see also* note 10, *supra*.

[12]  In order for a judgment creditor to reach trust assets to satisfy a judgment entered against a trust beneficiary, the creditor must commence a special proceeding against the trustee and obtain a court order directing the trustee to use trust assets to satisfy the judgment.  N.Y. CPLR § 5225(b) (2005); *Nat'l Bank of North Amer. v. Local 553*, 463 F. Supp. 636, 638 n.1 (E.D.N.Y. 1978).

Likewise, the fact that Wells Fargo executed a Satisfaction of Judgment form although it did not receive the TACA Litigation Proceeds cannot give rise to liability. The applicable court rules allow a Satisfaction of Judgment form to be filed either by the judgment creditor or its legal representative or assignee, without any requirement that the one executing the form actually receive the proceeds. *See* Local Rule 54.3(b) for the Southern District of New York.

### E. The Eighth Cause of Action Against Deutsche Bank, Bingham and Sidley for Aiding and Abetting Wells Fargo's Alleged Breach of Fiduciary Duty Fails As A Matter of Law.

As demonstrated in Section II(D) *supra*, Wells Fargo did not owe, and therefore did not and could not breach, any duty, fiduciary or otherwise, to plaintiff. As such, a claim against Deutsche Bank, Bingham and Sidley for "aiding and abetting" such a breach will not lie. *See In Re Sharp*, 403 F.3d at 50 (claim for aiding and abetting a breach of fiduciary duty requires a "breach by a fiduciary of obligations to another…") (citations omitted).

However, even if Wells Fargo did owe and subsequently did breach, a fiduciary duty to Jet Star (which it clearly did not), plaintiff's claim for aiding and abetting still fails. To state a claim for aiding and abetting under New York law, a plaintiff must allege "(1) a breach by a fiduciary of obligations to another, (2) knowing participation by defendant in the breach, and (3) damages to plaintiff." *Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996); *see In Re Sharp*, 403 F.3d at 49-50.

Plaintiff has not alleged "knowing participation" by Deutsche Bank, Bingham, or Sidley. "A person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator. . . .Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 170 (1st Dep't 2003) (citations omitted). Plaintiff's allegations against Deutsche Bank, Bingham and Sidley do not establish "substantial assistance." As to Deutsche Bank, the Amended Complaint alleges that it

"participated in the wrongful transfer by soliciting, receiving and accepting all of the TACA litigation proceeds."  Cplt., ¶ 52.  However, as demonstrated in Section II(B), Deutsche Bank simply exercised its pre-existing security interest.  *See* Gould Decl., Ex. D.

The only allegation regarding Bingham and Sidley's "participation" in Wells Fargo's alleged breach is that Bingham and Sidley prepared "the paper work necessary to effect the transfer" (Cplt., ¶ 52), and the only act Wells Fargo specifically is alleged to have performed in connection with the transfer is execution of the Satisfaction of Judgment – an act required by Fed. R. Civ. P. 69(a) and N.Y. CPLR §5020(a) and (c).  *Id.*, ¶¶ 48-49.  A law firm's preparation of a document in connection with an action its client was legally required to perform cannot conceivably constitute the "aiding and abetting" of a wrong.  *Cf. Schatz v. Rosenberg*, 943 F.2d 485, 496-97 (4th Cir. 1991) (aiding and abetting claim will not lie where lawyer merely acted as scrivener for client in preparing documents).

F.     **The Eleventh Cause of Action Fails to State a Claim For Declaratory Judgment/Piercing the Corporate Veil Against Soros and Chatterjee.**

Piercing the corporate veil is a narrow exception to the doctrine of limited liability for corporate entities, which courts should only permit under "extraordinary circumstances." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996).  The corporate veil will be pierced upon a showing that (i) the owners exercised complete domination of the corporation in respect to the transaction attacked, and (ii) such domination was used to commit a fraud or wrong against the plaintiff, which resulted in plaintiff's injury.  *See EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005).  Conclusory or vague allegations will not suffice. *Id.*; *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003). Simply asserting the conclusion that the "[defendants] 'did not observe corporate formalities' and that they 'fraudulently' transferred funds from the corporate entity to themselves for their own benefit" is insufficient.  *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,

216 F. Supp. 2d 198, 224 (S.D.N.Y. 2002). Rather, plaintiff "must assert specific facts showing that the defendants were doing business in their individual capacities without regard to corporate formalities." *Id.*

Here, plaintiff has not asserted any specific factual allegations that Soros or Chatterjee was using CS Aviation for their own personal purposes. Plaintiff alleges only that Soros and Chatterjee utilized their alleged domination and control of CS Aviation (i) to "cannibalize" CS Aviation by causing it to transfer all of the assets of CS Aviation to Deutsche Bank as part of the alleged July 25, 2003 transaction, (Cplt., ¶ 63) and (ii) to immediately upstream, or "dividend up" all CS Aviation "revenues," such as the payments plaintiff purportedly made to CS Aviation. Cplt., ¶¶ 61-62. Neither is a basis for piercing the corporate veil because plaintiff has not alleged an adequate nexus between the transactions and the injury it allegedly has incurred. *See e.g., EED Holdings,* 228 F.R.D. at 513.[13]

Plaintiff fails to allege the required nexus between its alleged injury, *i.e.*, the inability to collect its judgment against CS Aviation, and the July 25, 2003 transfers that allegedly "cannibalized" CS Aviation. As discussed above, the Acceptance Agreement shows that all of the assets that were allegedly transferred on July 25, 2003 belonged to entities other than CS Aviation. Moreover, as set forth above, that transaction was lawful and proper because it was in partial satisfaction of obligations of those entities to secured creditors. Therefore, plaintiff has not pleaded, and cannot plead, that its inability to enforce its judgment against CS Aviation is the result of the alleged July 25, 2003 transfers.

---

[13] The conclusory allegations that Soros and Chatterjee owned and controlled CS Aviation and failed to observe rules and formalities of corporate governance also are insufficient to satisfy the first element of a veil piercing claim. *United Feature*, 216 F. Supp. 2d at 224; *Zinaman v. USTS New York, Inc.,* 798 F. Supp. 128, 132 (S.D.N.Y. 1992).

Plaintiff also has failed to allege the required nexus between its alleged injury and the "dividends" CS Aviation allegedly paid to Soros and Chatterjee. Plaintiff's conclusory allegations that Soros and Chatterjee "upstreamed revenues" are so vague as to be meaningless. Plaintiff does not allege that it would have been able to collect on its judgment against CS Aviation if CS Aviation revenues had never been "dividended up" to Soros and Chatterjee. Rather, plaintiff acknowledges that Soros and Chatterjee returned monies to CS Aviation to fund its operations and plaintiff does not allege that the allegedly "dividended up" revenue exceeded the amount returned to CS Aviation. Plaintiff's allegations about the handling of CS Aviation's revenues and expenses simply describe what is comparable to a common cash management system used by affiliated corporations, and the Second Circuit has held that the use by affiliated corporations of a common cash management system is not a basis for piercing the corporate veil of any of those corporations. *See e.g., Fletcher v. Alex, Inc.*, 68 F.3d 1451, 1459 (2d Cir. 1995). Thus, the allegation that CS Aviation revenues were "dividended up" by itself is insufficient to support plaintiff's piercing the veil claim.

Plaintiff does not even allege when Soros and Chatterjee allegedly "dividended up" any revenues. Its failure to do so also demonstrates there are no allegations of a nexus between any alleged wrongful conduct and the injury of which the plaintiff complains. Plaintiff was not a judgment creditor of CS Aviation until July 2003, and any "dividends" allegedly paid to Soros and Chatterjee during the years prior to that judgment are unrelated to plaintiff's injury.

Therefore, plaintiff's Eleventh Cause of Action should be dismissed.

### G. The Twelfth Cause of Action Fails To State A Claim For Conversion Against Soros and Chatterjee

In its Twelfth Cause of Action, plaintiff alleges that Soros and Chatterjee converted for their own use, payments that plaintiff made to CS Aviation and which plaintiff alleges should

have been available to satisfy plaintiff's judgment.[14]  Cplt., ¶ 66.  The allegation fails to state a claim for conversion against either Soros or Chatterjee.

First, plaintiff has not alleged that the conversion occurred within the three-year period prior to November 18, 2005, when plaintiff first asserted the claim.  The statute of limitations governing a conversion claim sets a three-year limitation period.  *See* N.Y. CPLR § 214(4) (2005); *Meadowbrook- Richman, Inc. v. Associated Fin. Corp.*, 325 F. Supp. 2d 341, 365 (S.D.N.Y. 2004).  However, plaintiff has admitted that it made those payments in 1999 and 2000,[15] and plaintiff alleges that "whenever CS Aviation received revenue (such as plaintiff Jet Star's payments), the revenue was immediately upstreamed – or . . . "dividended up to Chatterjee and Soros."  Cplt., ¶ 61.  Thus, if there was any conversion, the conversion occurred long before November 17, 2002, three years before plaintiff asserted its claim on November 18, 2005.  Therefore, the conversion claim is time-barred.

Second, plaintiff seeks the recovery of funds it admittedly paid over to the seller of the airplanes.  When plaintiff transferred its payments to the seller of the airplanes, plaintiff ceased to own, control, or possess those funds, a fact which forecloses a conversion claim.  *Citadel Mgmt. Inc. v. Telesis Trust Inc.*, 123 F. Supp. 2d 133, 147, 148 n.4, 151 (S.D.N.Y. 2000).

Moreover, the funds could no longer be identified in the manner required to state a

---

[14] Plaintiff's allegation that it made payments to CS Aviation under its contract to purchase airplanes is belied by that contract.  Plaintiff's contract was with an owner-trustee (First Security Bank, N.A.).  CS Aviation was not a party to that contract. Moreover, the contract states that plaintiff had paid a prior deposit to the Seller, which is defined in the contract as the owner-trustee, not CS Aviation.  The contract further provides that additional payments by plaintiff are to be made to an account in the name of S-C Aircraft Holdings LLC, not an account in the name of CS Aviation.  *See* Karesh Decl., Ex. I.  This alone is basis to dismiss the conversion claim.  Because plaintiff makes specific reference to the Jet Star contract in paragraphs 13 and 72 of the amended complaint, this Court may consider that contract.  *See* Section I, *supra.*

[15] Plaintiff's admissions regarding the dates of its payments are set forth in plaintiff's Amended Complaint in the Jet Star Litigation.  Gould Decl., Ex. F.

conversion claim. Plaintiff does not allege that CS Aviation had a contractual obligation to pay to plaintiff "the *identical* funds allegedly converted" and, therefore, it has only alleged a debtor and creditor relationship between it and CS Aviation. As such, "an action for conversion of the funds which represent the indebtedness will not lie . . . ." *In re Ames Dep't Stores, Inc.*, 274 B.R. 600, 629 (Bankr. S.D.N.Y. 2002) (citations omitted) (emphasis in original); *aff'd*, 110 Fed. Appx. 191 (2d Cir. 2004). Because plaintiff does not, and cannot, "claim ownership of a 'specifically identifiable, segregated [3.2 million],'" it fails to state a claim for conversion. *High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1988).

Third, plaintiff's conversion claim should be dismissed because, that claim is based solely on the fact that CS Aviation failed under plaintiff's contract to make a timely return to plaintiff of payments made under that contract. A claim of conversion, however, cannot be predicated on a mere breach of contract. *See e.g.*, *Yeterian v. Healther Mills, N.V., Inc.*, 583 N.Y.S. 2d 439, 440 (1st Dep't 1992); *Peter Griffin Woodward, Inc. v. WCSC, Inc.*, 452 N.Y.S. 2d 599, 600 (1st Dep't 1982).

Fourth, plaintiff asserts that Soros and Chatterjee converted money paid to CS Aviation which is, at best, a derivative claim, for injury to CS Aviation, that plaintiff lacks standing to assert. *HBL Indus. v. Chase Manhattan Bank*, 45 B.R. 865, 868 (S.D.N.Y. 1985); *accord Jackson Nat'l Life Ins. Co. v. Litigator*, 949 F. Supp. 200, 204 (S.D.N.Y. 1996).

Therefore, plaintiff's Twelfth Cause of Action should be dismissed.

**H.     The Thirteenth Cause of Action Fails to State A Claim for "Multiple Acts of Fraudulent Conveyance" Against Soros and Chatterjee.**

In the Thirteenth Cause of Action, plaintiff alleges that on multiple occasions Soros and Chatterjee caused CS Aviation to "upstream revenues to themselves whenever such revenues appeared in CS Aviation accounts" and such "upstreaming" constituted fraudulent conveyances under section 274 of the UFCA because the transfers allegedly were made without fair

consideration and left CS Aviation with unreasonably small capital. Cplt. ¶ 68. Those allegations fail to state a claim for a fraudulent conveyance under section 274 of the UFCA.

In order to plead adequately a claim for a fraudulent conveyance under section 274 of the UFCA, plaintiff must allege a "conveyance made without fair consideration" and that "the person making [the transfer] is engaged . . . in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital." N.Y. Debt. & Cred. Law § 274. Plaintiff's allegations are insufficient for several reasons.

First, there is no allegation that any net amount was "dividended up" from CS Aviation accounts. This is a critical allegation because plaintiff does plead in its Amended Complaint that Soros and Chatterjee made capital contributions as necessary to fund the operating expenses of CS Aviation. Cplt., ¶ 62. Without a quantification of both the amount allegedly paid in dividends by CS Aviation and the amount of capital contributions that Soros and Chatterjee returned to CS Aviation, the Amended Complaint fails to allege a net transfer of funds out of CS Aviation to Soros or Chatterjee.

Second, plaintiff does not and cannot make any factual allegation from which it might be inferred that the nature of CS Aviation's business was such that, following the alleged "dividends" at issue, it was left with unreasonably small capital. CS Aviation was a service manager for companies that owned airplanes and wished to lease or sell those airplanes to other companies. *See* Gould Decl., Ex. C, pp. 2, 9, and 21 (definitions of "Administrative Agreement," "CS Aviation," and "Servicer"), and p. 66 ("obligation to enter management agreements"). As a service provider, CS Aviation could not reasonably be expected to incur significant liabilities on its own account. Indeed the only CS Aviation liabilities that plaintiff identifies are its office and payroll costs, and plaintiff alleges that Soros and Chatterjee ensured that CS Aviation always had sufficient capital to meet those liabilities. Cplt., ¶ 62. Therefore, plaintiff has not alleged that CS

Aviation was left with unreasonably small capital as a result of any dividends to Soros and Chatterjee.

Therefore, plaintiff's Thirteenth Cause of Action fails to state a claim.

## I.    The Fifteenth Cause of Action Fails to State Claims for Fraud and Fraudulent Inducement Against Soros, Chatterjee and Wells Fargo

In the Fifteenth Cause of Action, plaintiff alleges that an agent acting on behalf of Soros, Chatterjee, Wells Fargo, and CS Aviation fraudulently induced plaintiff to enter into its contract to purchase airplanes by misrepresenting that Soros, Chatterjee and Wells Fargo "would stand behind the contract and guarantee that CS Aviation honored its obligations" (Cplt., ¶¶ 72-73) and that "the contract would be signed by an American Bank on which Jet Star could rely for performance under the contract"  Cplt., ¶ 75.  Plaintiff's allegations fail to state a fraudulent inducement claim.

First, the claim is barred under the applicable statute of limitations, which runs six years from the contract execution or two years from discovery of the fraud, whichever is longer.  N.Y. CPLR § 213(8); *Ply\*Gem of Laurel, Inc. v. Lee*, 456 N.Y.S.2d 382, 383 (1st Dep't 1982).  Here, the contract plaintiff alleges it was fraudulently induced to enter was executed on or about August 10, 1999.  *See* Cplt., ¶ 20 and Karesh Decl., Ex. I.  Plaintiff, however, did not assert its fraudulent inducement claim until more than six years later, on November 18, 2005, when it served its amended complaint in this action.  Thus, the claim is time barred under the six-year statute of limitations; and the two-year discovery period is not applicable because, by instituting suit against CS Aviation in 2001 (Gould Decl., Ex. F), plaintiff admitted that it was aware at least by then that no one was honoring CS Aviation's obligations to plaintiff.

Second, the fraudulent inducement claim should be dismissed because plaintiff has already sued to enforce, rather than rescind, its contract to purchase the airplanes. *See Soviero Bros. Contracting Corp. v. City of New York*, 142 N.Y.S. 2d 508, 514 (1st Dep't 1955);

*Morrissey v. General Motors Corp.*, 21 Fed. Appx. 70, 73 (2d. Cir. 2001). Here, plaintiff affirmed the contract by suing and recovering a judgment on the contract in the Jet Star Litigation. Plaintiff never sought to assert a fraud claim in that action and is barred from doing so now in this action.

Third, plaintiff explicitly agreed in its contract that it was not relying on any statements made during negotiations and not included in the contract. *See* Karesh Decl., Ex. I, ¶ 11.10. This clause bars the claim asserted here which is based on alleged misrepresentations made before plaintiff entered the contract. *See Citibank v. Plapinger*, 66 N.Y.2d 90, 95 (1985); *Gindi v. Silvershein*, No. 93 Civ. 8679 (LLS), 93 Civ. 8680 (LLS), 1996 WL 194304 (S.D.N.Y. 1996). Even if plaintiff had not agreed to the above-stated clause, it still could not plead adequately that it relied on the pre-contract statements allegedly made to it because plaintiff easily could have protected itself by insisting that the promise be included in its contract. *See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195-96 (2d Cir. 2003) (citing cases).

J.     **The Sixteenth Cause of Action Fails to State A Claim for Promissory Estoppel Against Soros, Chatterjee and Wells Fargo.**

In the Sixteenth Cause of Action, plaintiff alleges that the statements made by the agent purportedly acting on behalf of Soros, Chatterjee, Wells Fargo, and CS Aviation are a basis for a promissory estoppel claim. (Cplt., ¶ 80) That claim is also deficient.

First, plaintiff alleges that it entered into, and enforced, a contract to buy the airplanes but the doctrine of promissory estoppel applies only when there is no written contract or the written contract cannot be enforced. *Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing*, 53 F. Supp. 2d 199, 219-20 (S.D.N.Y. 1999).

Second, plaintiff does not, and cannot allege, that "unconscionable injury" which is a required element when a plaintiff asserts, as plaintiff does here, that an oral promise barred under the statute of frauds[16] is nevertheless enforceable under the doctrine of promissory estoppel. *See Marvin Inc. v. Albstein*, 386 F. Supp. 2d 247, 254 (S.D.N.Y. 2005); *Celi v. Canadian Occidental Petroleum Ltd.*, 804 F. Supp. 465, 470-71 (E.D.N.Y. 1992). The unconscionable injury must be "beyond that which flows naturally . . . from the non-performance of the unenforceable agreement." *Marvin*, 386 F. Supp. 2d at 254 (citations omitted). Here, however, plaintiff complains about its inability to enforce its judgment against CS Aviation, which obviously flows from the non-performance of the alleged promise to honor CS Aviation's obligations. Having failed to plead any "injury" beyond that, plaintiff has not adequately pleaded the "unconscionable injury" required to support its promissory estoppel claim. *Id.*

Third, plaintiff fails to plead adequately that it justifiably relied on the promises that Soros, Chatterjee and Wells Fargo would honor CS Aviation's obligations. Plaintiff's conclusory reliance allegations are deficient because plaintiff agreed in the contract it signed that it did not enter the contract in reliance on any pre-contract representations. *See Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, * 6-7 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 Fed. Appx. 191 (2d Cir. 2004); *DDCLab*, No. 03 CV 3654GBD, 2005 WL 425495, * 8 (S.D.N.Y. Feb. 18, 2005) ("Given the unambiguous integration clause . . . there existed no basis for … justifiable reliance on the alleged oral promises made

---

[16] The alleged promise by Soros, Chatterjee and Wells Fargo to "stand behind, honor, and pay CS Aviation's obligations" (Cplt., ¶ 80) must be in signed writing, pursuant to General Obligations Law § 5-701(2), because it is "a special promise to answer for the debt, default or miscarriage of another person." *Schwartz v. Teller*, 646 N.Y.S.2d 24, 24-25 (2d Dep't 1996) (stockholder's oral agreement to pay corporation's attorney fees does not satisfy statute of frauds). *See also Al Sayegh Bros. Trading (LLC) V. Doral Trading & Export, Inc.*, 219 F. Supp. 2d 285, 293 (E.D.N.Y. 2002) (officer's oral statement that he would be liable personally for corporation's debts does not satisfy statute of frauds).

prior [to] the execution of that agreement."); *Phoenix Racing*, 53 F. Supp. 2d at 220. In addition, allegations of justifiable reliance on oral promises also are deficient where, as here, there actually was a written contract and the party claiming reliance failed to insert appropriate language in the contract regarding the alleged oral promises. *See e.g., Banco*, 2003 WL 23018888, at *6-7; *D'Accord Fin. Serv., Inc. v. Metsa-Serla Oy*, No. 98 Civ. 5847 (DLC), 1999 WL 58916, *4 (S.D.N.Y. Feb. 8, 1999).

Therefore, plaintiff's Sixteenth Cause of Action fails to state a claim.

**K.      All Causes of Action Against Wells Fargo Should Be Dismissed For the Added Reason That They Are Asserted Against Wells Fargo In Its Individual Capacity, Whereas the Default Judgment in Favor of Jet Star Is Entered Against Wells Fargo Solely In Its Capacity as Owner-Trustee.**

Plaintiff has sued "Wells Fargo Bank Northwest, N.A." and has alleged in paragraph 7 of the amended complaint only that "Defendant Wells Fargo Bank Northwest, NA ("Well [sic] Fargo") is a national banking association with its principle [sic] place of business in the State of Utah." In paragraph 16 of the amended complaint, plaintiff alleges that "on July 15, 2003, this Court [Judge Batts] rendered a default judgment in favor of Jet Star and against . . . Wells Fargo. . . ." This is the action which plaintiff identifies as the "Jet Star Litigation."

Plaintiff thus seeks to mislead this Court into believing that Wells Fargo is a judgment debtor in its individual capacity. As plaintiff well knows, the judgment referenced in paragraph 16 of the amended complaint was modified by the Memorandum and Order dated February 25, 2004 of Judge Batts, 01 Civ. 6590 (DAB) in which, among other things, her Honor directed the clerk of this Court to revise the July 15, 2003 default judgment so that it is entered against "Wells Fargo Bank Northwest, N.A. '*solely in its capacity as Owner-Trustee* for the benefit of C. S. Aviation Services.'" *Jet Star*, 2004 WL 350733, at *8 (emphasis added) Gould Decl., Ex. G. Notwithstanding that unambiguous amendment, plaintiff fails, in its amended

complaint herein, to make any reference to the **_limited, trustee capacity_** in which that default judgment, as modified, was entered against Wells Fargo.

In sum, plaintiff's causes of action against Wells Fargo—all brought against Wells Fargo in its individual capacity—should be dismissed in their entirety because they are all impermissibly grounded on a default judgment that was explicitly entered against Wells Fargo "solely in its capacity as Owner-Trustee."

Plaintiff, in its amended complaint herein, tries to ignore the existence of the eight separate trusts. However, even if one could accept *arguendo* Jet Star's allegation that the separate trusts could somehow be treated as one, Jet Star still would have no viable claim. It is well-settled that, absent statutory compulsion or agreement to the contrary, a debtor -- even in insolvency -- may prefer one creditor over another. *In re Sharp*, 403 F.3d at 54; *Ultramar Energy Ltd.*, 599 N.Y.S.2d at 819.

## CONCLUSION

For the foregoing reasons, Defendants Soros, Chatterjee, Wells Fargo, Sidley, Akin, Deutsche Bank, Bingham, and MB Trust respectfully request that the Court dismiss the Amended Complaint against them in its entirety and grant such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         December 12, 2005

Respectfully submitted,

BINGHAM McCUTCHEN LLP


By:/s/ Lauren C. Gould

    Robert M. Dombroff (RD 6902)
    Mark M. Elliott (ME 0840)
    Lauren C. Gould (LG 1995)
    Maryaneh Mona Simonian (MS 2654)
    399 Park Avenue
    New York, New York 10022
    (212) 705-7000
    *Attorneys for Defendants Deutsche Bank,*
    *Trust Americas, MB Statutory Trust and*
    *Bingham McCutchen LLP*


VEDDER, PRICE, KAUFMAN &
KAMMHOLZ, P.C.


By:/s/ John C. Grosz
    John I. Karesh (JK 4280)
    John C. Grosz (JG 6081)
    805 Third Avenue
    New York, New York 10022
    (212) 407-6990
    *Attorneys for Wells Fargo Bank Northwest,*
    *N.A.*


PATTERSON BELKNAP WEBB & TYLER,
LLP


By:/s/ Kenneth J. King
    Kenneth J. King (KK 3567)
    1133 Avenue of the Americas
    New York, New York 10036
    (212) 336-2555
    *Attorneys for Akin Gump Strauss Hauer &*
    *Feld LLP*


FRIEDMAN KAPLAN SEILER & ADELMAN
LLP


By:/s/ Lance J. Gotko
    Eric Seiler (ES 5437)
    Lance J. Gotko (LG 5443)
    Mala Ahuja Harker (MH 7176)
    1633 Broadway
    New York, New York 10019
    (212) 833-1100
    *Attorneys for Sidley Austin Brown & Wood*
    *LLP*


BUTLER, FITZGERALD, FIVESON &
McCARTHY, P.C.


By:/s/ Raymond L. Fitzgerald
    Raymond L. Fitzgerald (RF 9526)
    David J. McCarthy (DM 7910)
    350 Fifth Avenue
    Suite 6215
    New York, New York 10118
    (212) 615-2200
    *Attorneys for George Soros*


MORRISON COHEN LLP


By:/s/ David A. Piedra
    David A. Piedra (DP 9693)
    909 Third Avenue
    New York, New York 10022
    (212) 735-8600


    *Of Counsel*


    Dustin F. Hecker
    Posternak Blankstein & Lund LLP
    800 Boylston Street
    Boston, MA 02199
    (617) 973-6131
    *Attorneys for Purnendu Chatterjee*

NYDOCS/1232731.8